**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Kenneth BURTON, Defendant–**
**Appellant.**

No. 99–4465.

United States Court of Appeals,
Fourth Circuit.

Argued: May 3, 2000

Decided: Sept. 27, 2000

---

**ARGUED:** Leesa Washington, Assistant Federal Public Defender, Greenville, South Carolina, for Appellant. E. Jean Howard, Assistant United States Attorney, Greenville, South Carolina, for Appellee.

ON BRIEF: J. Rene Josey, United States Attorney, Greenville, South Carolina, for Appellee.

Before NIEMEYER, TRAXLER, and KING, Circuit Judges.

Vacated and remanded by published opinion. Judge NIEMEYER wrote the opinion, in which Judge TRAXLER joined. Judge KING wrote a dissenting opinion.

## OPINION

NIEMEYER, Circuit Judge:

Kenneth Burton challenges the district court's denial of his motion to suppress evidence of a handgun that was discovered when a police officer reached inside Burton's coat during a "police-citizen encounter." The officer justified his search because Burton refused to respond to the officer's questions and to remove his hand from inside his coat, making the officer "uneasy." We find that the officer's search was not supported by a reasonable suspicion of criminal activity and therefore constituted an illegal search. Accordingly, we vacate Burton's conviction based on the evidence thus obtained and remand.

### I

On the afternoon of March 4, 1998, in Laurens, South Carolina, Kenneth Burton was standing at a pay telephone outside the Green Street Mini–Mart when he was approached by four police officers who were in the area serving outstanding warrants. When one of the officers, Detective Tracy Burke, identified himself as a policeman and requested identification from Burton, Burton did not respond. The officers repeated their request several times, but Burton remained mute. The officers then asked Burton to remove his right hand from his coat pocket. When Burton failed to do so, the officers repeated their request. Burton still did not respond.

While the other officers remained facing Burton, Officer Burke moved behind Burton, reached around him, thrust his hand into Burton's coat, and grabbed his right hand. Burton resisted, and a struggle ensued, during which the officers wrestled Burton to the ground. While on the ground, Officer Burke claims that Burton "raised his left side of his body up" and pointed a handgun at Officer Burke, who was lying on top of him. Burton squeezed the trigger three or four times, but the gun was jammed and did not fire. The officers subdued Burton and removed the weapon.

Burton was indicted for unlawful possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g). He moved to suppress the firearm as the fruit of an illegal search. At the evidentiary hearing before the district court, Officer Burke testified that at the time he approached Burton, he had no reason to suspect that Burton was engaged in criminal activity, but Burton's refusal to remove his hand from his coat made Officer Burke feel "uneasy about our safety being there with him with his hand and no response, you know, towards us." Officer Burke thought that Burton "possibly had a weapon in his pocket or in his hand or in his coat that he was holding on to. It could have been narcotics or maybe [an] alcoholic beverage or something." The district court denied Burton's motion to suppress, finding that the incident was "more in the light of a police-citizen encounter" and that "the officers were entirely within their rights not only to engage in the encounter, but then to take precautionary measures which they took."

A jury subsequently convicted Burton, and the district court sentenced him to 115 months imprisonment. Burton's appeal is limited to review of the district court's order denying his suppression motion.

### II

Burton contends that his Fourth Amendment rights were violated when Officer Burke reached inside Burton's coat because this search was supported neither by probable cause nor by the lower stan-

dard of reasonable suspicion. Burton points out that Officer Burke conceded that the officers were unaware of any existing outstanding warrant against him, that Burton "exhibited no evasive or suspicious behavior and [that] there was no indication that he was at the time engaging in any illegal activity." Burton argues that his "refusal to comply with the orders of the police and his decision not to respond to the questions and commands of the police was in direct response to the illegal actions of the police and cannot serve as a basis for suspicion."

The government argues that during the contact between the officers and Burton, which they characterize as a "police-citizen encounter," the officers acted properly, out of concern for their safety, in determining what Burton had in his pocket. They argue, however, that "Burton chose to stay in a position and act in a way which threatened the safety of both the officers and the public." They maintain that "[o]nly after Burton refused to take his hand away from his pocket did Officer Burke reach around Burton and try to determine what was in Burton's pocket." They also state that when officers confront citizens on the street, they may "conduct a limited search for weapons when a reasonably prudent officer in similar circumstances would believe that his safety or the safety of others was in danger."

We are thus presented with the question whether, in the circumstances presented, Officer Burke's concern for his own safety, as well as the safety of his fellow officers, justified his decision to reach inside Burton's coat during what was, concededly, a routine "police-citizen" encounter.

 The applicable principles are well established. "Law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or another public place." *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). Police may question citizens without implicating Fourth Amendment protections. *See INS v. Del-*

*gado,* 466 U.S. 210, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). Indeed, officers remain free to seek cooperation from citizens on the street without being called upon to articulate any level of suspicion or justification for their encounters. The authority of police officers to initiate such "police-citizen encounters" is the same as, but no greater than, the authority of an ordinary citizen to approach another on the street and ask questions. By the same token, the citizen encountered in this manner has the "right to ignore his interrogator and walk away." *Terry v. Ohio,* 392 U.S. 1, 33, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (Harlan, J., concurring); *see also id.* at 34, 88 S.Ct. 1868 (White, J., concurring) ("There is nothing in the constitution which prevents a policeman from addressing questions to anyone on the streets. Absent special circumstances, the person … may refuse to cooperate and go on his way"); *United States v. Sullivan,* 138 F.3d 126, 132 (4th Cir.1998) ("[So] long as a person remains at liberty to disregard a police officer's request for information, no constitutional interest is implicated" (quoting *United States v. Black,* 675 F.2d 129, 134 (7th Cir.1982))). Only when an officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry,* 392 U.S. at 19 n. 16, 88 S.Ct. 1868. Thus, police officers may not place their hands on citizens "in search of anything" without "constitutionally adequate, reasonable grounds for doing so." *Sibron v. New York,* 392 U.S. 40, 64, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

 A police officer may elevate a police-citizen encounter into an investigatory detention only if the officer has a "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). Reasonable suspicion is something more than an "inchoate and unparticularized suspicion or 'hunch,'" *Terry,* 392 U.S.

at 27, 88 S.Ct. 1868, and it is the government's burden to articulate facts sufficient to support reasonable suspicion, *see Brown v. Texas,* 443 U.S. 47, 52, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); *see also Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality opinion).

■ Once an officer has a basis to make a lawful investigatory stop, he may protect himself during that stop by conducting a search for weapons if he "has reason to believe that the suspect is armed and dangerous." *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). But an officer may not conduct this protective search for purposes of safety until he has a reasonable suspicion that supports the investigatory stop:

> [P]olicemen have no more right to "pat down" the outer clothing of passers-by, or persons to whom they address casual questions, than does any other citizen.... [I]f the frisk is justified in order to protect the officer during an encounter with a citizen, *the officer must first have constitutional grounds to insist on an encounter, to make a* forcible *stop.* Any person, including a policeman, is at liberty to avoid a person he considers dangerous. If and when a policeman has a right instead to disarm such a person for his own protection, he must first have a right not to avoid him but to be in his presence. That right must be more than the liberty (again, possessed by every citizen) to address questions to other persons, for ordinarily the person addressed has an equal right to ignore his interrogator and walk away; *he certainly need not submit to a frisk for the questioner's protection.*

*Terry,* 392 U.S. at 32–33, 88 S.Ct. 1868 (Harlan, J., concurring) (emphases added); *see also Adams,* 407 U.S. at 146, 92 S.Ct. 1921 ("*So long as the officer is entitled to make a forcible stop,* and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose" (emphasis added) (footnote omitted)).

In short, an officer may encounter citizens and attempt to question them without implicating the Fourth Amendment. But during such police-citizen encounters, an officer is not entitled, without additional justification, to conduct a protective search. To conduct such a protective search, an officer must first have reasonable suspicion supported by articulable facts that criminal activity may be afoot.

■ In this case, it is undisputed that at the time the officers approached Burton and began asking him questions, they did not have any reason to suspect that he was engaged in criminal activity. Officer Burke testified that there was no reason to believe "that Mr. Burton was involved in any kind of disturbance or any type of illegal activity." Burton was "just standing at a telephone booth," and the officers were "just out looking for people or several people with outstanding bench warrants." As the officers approached Burton, all he did was to continue standing as he was and refuse to answer questions. Officer Burke explained that Burton's refusal to answer the officers' questions or to comply with their requests that he remove his hand from his coat pocket made Burke feel "uneasy about our safety." But before Officer Burke was entitled to allay his safety concerns and conduct a protective search, he had to be presented with objective facts that would justify an investigatory *Terry* stop—a reasonable suspicion that a crime had been committed or that criminal activity was taking place. In the absence of reasonable suspicion, the officer's alternative was "to avoid a person he considers dangerous." *Terry,* 392 U.S. at 32, 88 S.Ct. 1868.

■ In asserting that officers are entitled, during a police-citizen encounter, to conduct a limited search for weapons when a reasonable officer in similar circumstances would believe that his safety was in danger, the government misconstrues the relevant principles of Fourth Amendment jurisprudence. In the language of

the Supreme Court, Burton had a "right to go about his business or to stay put and remain silent in the face of police questioning," *Illinois v. Wardlow,* 528 U.S. 673, ——, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000), and an individual's "refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for detention or seizure," *Florida v. Bostick,* 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *see also United States v. Flowers,* 912 F.2d 707, 712 (4th Cir.1990) (noting that a defendant has "the right to refuse to speak with … officers, who in turn possess no right to detain citizens who decline to talk or otherwise identify themselves").

■ There is no evidence in the record that Burton made any moves as Officer Burke approached. He simply continued to stand by the telephone booth with his hand in his pocket. He did refuse to talk with the policemen and to remove his hand from his pocket, but something more is required to establish reasonable suspicion that criminal activity is afoot. And in the absence of reasonable suspicion, an officer may not frisk a citizen merely because he feels uneasy about his safety. We therefore conclude that Officer Burke's reaching inside Burton's coat was an unlawful search, and the handgun discovered as a result of this search must therefore be suppressed.

Accordingly, we vacate Burton's judgment of conviction and remand for further proceedings not inconsistent with this opinion.

*VACATED AND REMANDED.*

KING, Circuit Judge, dissenting:

With all respect to my distinguished colleagues in the majority, I must dissent.

Not all police-citizen encounters amount to seizures within the meaning of the Fourth Amendment. *See Florida v. Bos-*

*tick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (seizure does not occur simply because police officer approaches individual and asks questions). Instead, a seizure occurs only when the officer, by means of physical force or show of authority, restrains the liberty of a citizen in such a way that a reasonable person would believe he is not free to terminate the encounter. *See California v. Hodari D.,* 499 U.S. 621, 626–29, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). In other words, an officer may, at any time, approach any individual to ask questions, and no justification is required as long as a reasonable person would believe he is free to walk away. As the Supreme Court made clear:

> [E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, ask to examine the individual's identification, and request consent to search his or her luggage, as long as the police do not convey a message that compliance with their requests is required.

*Bostick,* 501 U.S. at 434–35, 111 S.Ct. 2382 (citations omitted).

While we review the district court's legal conclusions de novo, we review its factual findings—including a court finding that a law officer's fear was reasonable—for clear error. *United States v. Rusher,* 966 F.2d 868, 873 (4th Cir.1992). Officer Burke[1] needed no justification to approach Burton, but there is no doubt that he later seized and searched him. At this latter point, he needed reasonable suspicion—proper justification—for his actions.

Several important principles guide our review in this regard. For example, if, during a consensual encounter, an officer becomes aware of facts that justify a reasonable fear for his safety, that officer may respond with a protective frisk to safeguard himself and others. As the Su-

---

1. I use "Officer Burke" to refer both to Officer Burke individually and to all of the officers collectively.

preme Court has recognized, an officer may conduct a reasonable search if there is "reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *See also United States v. Davis,* 202 F.3d 1060, 1063 (8th Cir.2000) ("The danger to officer safety that justifies a protective search may arise after a consensual encounter or investigative stop has commenced."). Thus, our question is simple: Was Officer Burke reasonable in his perception that Burton was armed and constituted a safety threat? As Chief Judge Wilkinson has cogently observed, courts make this commonsensical inquiry "crediting the practical experience of officers who observe on a daily basis what transpires on the street." *United States v. Lender,* 985 F.2d 151, 154 (4th Cir.1993), *quoted in United States v. Brugal,* 209 F.3d 353, 359 (4th Cir.2000) (en banc). More importantly for the purposes of this appeal, the district court has already found two vital facts: first of all, Officer Burke had subjective fear and, secondly, his fear was objectively reasonable.

To the extent the majority has concluded that the district court clearly erred in these findings, I disagree. Officer Burke's testimony was specifically credited by the district court, and much of that testimony related to his belief that he was in danger. This belief was entirely sufficient to justify all that occurred thereafter.[2] When Officer Burke was asked what he thought Burton had in his pocket, he responded:

> My opinion was he possibly had a weapon in his pocket or in his hand or in his coat that he was holding on to.

J.A. 21. While Burke acknowledged, "It could have been narcotics or maybe [an] alcoholic beverage or something," *id.,* his opinion was prophetically correct. Burton in fact possessed a loaded handgun, in his pocket. And luckily for the officers, it misfired.

Had Burton simply failed to respond to Officer Burke's inquiries, I might be constrained to agree with the majority. However, Burton did more: He held his hand close to his chest—inside his coat—and refused to remove it. J.A. 20, 31. And Burton's non-response to requests that he remove his hand from his coat constituted—crediting the practical experience of the officers—an entirely reasonable safety concern.

When Officer Burke directed Burton, "Remove your hand from your pocket," the clear message from Officer Burke was, "I feel threatened by the position of your hand." The finding that Officer Burke's fear for his safety was reasonable is the paradigmatic circumstance in which we should defer to a district court. What constitutes a "threat" is a classic factual inquiry that depends on the time, place, and other circumstances surrounding an incident. I will not, in these circumstances, vote to disturb that finding.

We all strongly support the Constitution and its Fourth Amendment. And we abhor violations of its strictures. However, the Constitution does not mandate our loyal public servants acting with trepidation in the face of danger, such that they may be needlessly sacrificed or injured in their efforts to protect the public and uphold the rule of law.

I dissent.

**2.** Moreover, Officer Burke's testimony encompassed a belief that criminal activity was afoot. In South Carolina, the unauthorized possession of a pistol, as well as the carrying of a concealed weapon, are separate violations of the criminal statutes. *See* S.C.Code Ann. §§ 16–23–20, –460 (Law. Co-op.1976 & Supp.1999).