Young, J.,
with whom Rose, C. J., agrees,
dissenting:
I agree with the majority that the first encounter was consensual and that the detention and attempted seizure of Lisenbee’s person was unlawful under Terry v. Ohio, 392 U.S. 1 (1968). However, I depart from the majority’s conclusion that Lisenbee lacks standing to object to the seizure of the contraband. I also disagree with the majority’s determination that it was improper for Lisenbee to break away from the police officers.
Lisenbee was observed, during daylight hours, in an open and exposed area not reputed for criminal activity. He was seen first knocking on the door and then peering in the window of an acquaintance’s residence. Lisenbee initially observed the officers exit a marked police car and approach him from a distance of approximately thirty feet. Instead of fleeing from and attempting to evade the approaching officers, Lisenbee waved to and willingly spoke with them. He did not make -any suspicious movements or gestures. Lisenbee gave the officers his correct name and provided exculpating identification. Lisenbee then voluntarily lifted his shirt, displaying his waist area, and revealed a legal pocketknife. The meeting between Lisenbee and the two officers was voluntary and consensual in nature, implicating no Fourth Amendment interest.
However, Fourth Amendment scrutiny is triggered the moment an encounter between a police officer and a person “loses its consensual nature.” Florida v. Bostick, 501 U.S. 429, 434 (1991). A person is seized, within the meaning of the Fourth Amendment, if, in view of all the circumstances surrounding the incident, a reasonable person would not believe that he was free to leave. State v. Sinnett, 104 Nev. 398, 401, 760 P.2d 124, 127 (1988).
The consensual aspect of this encounter disappeared the moment Lisenbee’s arm was grabbed by one of the officers and Lisenbee refused to submit to a more invasive search. Under such restraint, Lisenbee would not “feel free to leave” and walk away and, for Fourth Amendment purposes, Lisenbee was then “seized” by the officers.
*1134 Terry and its progeny instruct that law enforcement officers may seize and search individuals based on a reasonable suspicion of criminal activity derived from “specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant that intrusion.” Terry, 392 U.S. at 21-22. The detaining officers “must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.” United States v. Cortez, 449 U.S. 411, 417-18 (1981). The officers in this case unlawfully invaded Lisenbee’s sanctity.
Although he may have, in some way not articulated, fit the vague description of the burglary suspect, any suspicion that Lisenbee was the sought-after burglar was dispelled the instant he provided the officers with identification. Even if Lisenbee had no identification on his person, the officers had no basis to continue detaining him. Lisenbee should have been free to leave because the rationale for stopping him had dissipated and the evidence indicated, using the Terry standard, that the officers lacked the necessary reasonable suspicion to justify his continued detention.
A police officer who has stopped someone because of suspected criminal activity may conduct a search of the person for weapons if the officer reasonably suspects that the person is dangerous. Terry, 392 U.S. at 30; see NRS 171.1232. “Terry requires reasonable, individualized suspicion [that a suspect is armed] before a frisk for weapons can be conducted.” Maryland v. Buie, 494 U.S. 325, 334 n.2 (1990). The evidence in this case never suggested or indicated that Lisenbee posed a danger to the officers’ safety.
Lisenbee’s conduct was not threatening. The evidence did not suggest that he was carrying a concealed weapon. I cannot assume on these facts that Lisenbee posed a threat to the officers because he carried a legal pocketknife. The attempted frisk after he voluntarily exhibited the knife was illegal and the officers should have released him. If we conclude that the officers acted reasonably in this instance, this court would be concluding that officers have the requisite reasonable suspicion to frisk a person in rural Nevada when the person voluntarily shows he is carrying a legal pocketknife.
Further, in United States v. Burton, 228 F.3d 524 (4th Cir., 2000), a police officer did not maintain a sufficient basis to suspect that the defendant, who refused to provide identification, answer any questions, or comply with repeated requests to remove his hand from his coat pocket, was engaged in criminal activity. The officer testified that the defendant’s inaction made him feel “uneasy about [his] safety” and thought that the defendant “possibly had a weapon in his pocket.” Id. at 526. However, the court concluded that the officer’s “reaching inside [defendant’s] coat *1135 was an unlawful search . . . and the handgun discovered must therefore be suppressed’ ’ because the officer did not initially have sufficient reasonable suspicion, under Terry, that criminal activity was afoot. Id. at 529. Here, Lisenbee gave a significantly lesser impression that he was involved in criminal activity and posed a considerably smaller threat to the officers’ safety than the defendant in Burton.
In light of the evidence, I question whether it was improper for Lisenbee to break away and attempt to preserve his freedom. According to the majority, Lisenbee’s flight from the police ended the unlawful seizure and his subsequent “conduct during flight should be considered apart from the illegal police action.” If Lisenbee had attempted to slowly walk away, would the officers still be acting lawfully in seizing him? This was not at a crime scene. The officers had no “particularized and objective basis” for further detention.
Here, the police misconduct was infected with sufficient infirmities to render Lisenbee’s abandonment of the contraband involuntary. Abandonment of property in response to police investigation does not, per se, render abandonment involuntary. See United States v. Humphrey, 647 F.2d 995, 998 n.5 (9th Cir. 1981) (citing United States v. Colbert, 474 F.2d 174, 176 (5th Cir. 1973)). There must be a nexus between the allegedly unlawful police conduct and abandonment of property if the challenged evidence is to be suppressed. United States v. Haddad, 558 F.2d 968, 975 n.6 (9th Cir. 1977). Lisenbee’s actions were triggered by the original illegal intrusion, and the contraband evidence is thus inadmissible as fruit of the poisonous tree. Wong Sun v. United States, 371 U.S. 471 (1963).
The abandonment of the contraband was not an act of free will on Lisenbee’s part sufficient to purge the taint of his initial stop and the attempted pat down as suggested by the majority. The contraband was involuntarily abandoned as a product and direct consequence of the illegal seizure. It would be absurd to view Lisenbee’s act of abandonment as coincidental; his actions were foreseeable and predictable. The majority appears to have overlooked the wealth of authority indicating that contraband abandoned during flight is inadmissible if it is the product of a prior illegal search or seizure. See United States v. Beck, 602 F.2d 726, 729-30 (5th Cir. 1979) (concluding that “[w]hile it is true that a criminal defendant’s voluntary abandonment of evidence can remove the taint of an illegal stop or arrest [citation omitted], it is equally true that for this to occur the abandonment must be truly voluntary and not merely the product of police misconduct”); United States v. Gilman, 684 F.2d 616, 620 (9th Cir. 1982) (concluding that “a loss of standing to challenge a search *1136 cannot be brought about by unlawful police conduct” [citation omitted]); State of New Jersey v. Tucker, 642 A.2d 401, 409 (N.J. 1994) (holding that because “there was an unreasonable seizure ... the goods were not abandoned”); Smith v. Commonwealth of Virginia, 407 S.E.2d 49, 52 (Va. Ct. App. 1991) (holding that “since the search of the defendant was not justified by the circumstances, the discovery of the cocaine was the product of an illegal search and, therefore, inadmissible into evidence”).
The district court’s order suppressing the evidence should be affirmed. To admit the contraband into evidence would likely encourage similar Fourth Amendment violations in the future. Therefore, I respectfully dissent.