UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.                                                  No. 02-4676

SAMUEL JAMES WYATT,
            *Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of West Virginia, at Beckley.
Charles H. Haden II, District Judge.
(CR-02-27)

Argued: December 5, 2003

Decided: January 5, 2004

Before WILLIAMS, KING, and DUNCAN, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** George Howard Lancaster, Jr., Assistant Federal Public Defender, Charleston, West Virginia, for Appellant. John Lanier File, Assistant United States Attorney, Charleston, West Virginia, for Appellee. **ON BRIEF:** Mary Lou Newberger, Federal Public Defender, Jonathan D. Byrne, Legal Research and Writing Specialist, Charleston, West Virginia, for Appellant. Kasey Warner, United States Attorney, Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Samuel Wyatt, convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (2000), appeals the district court's denial of his motion to suppress all evidence related to the discovery of the firearm in his vehicle during a traffic stop. Wyatt argues the discovering officer lacked reasonable suspicion to conduct the protective frisk that led to the subsequent discovery of the firearm and lacked probable cause to search his vehicle. Because we are satisfied that both the frisk and search of Wyatt's vehicle were reasonable, we affirm.

I.

On October 12, 2001, Sergeant Samuel Lake of the West Virginia State Police pulled Wyatt over for speeding. At Sergeant Lake's request, Wyatt exited his vehicle and began walking with Sergeant Lake back to Lake's patrol car. As the two approached the patrol car, Sergeant Lake stopped, turned (coming within twelve to sixteen inches of Wyatt), and asked Wyatt whether he had any guns or knives in his possession. Wyatt dug his left hand into the left front pocket of his jeans and produced two knives, which Sergeant Lake directed Wyatt to place on the trunk of his car. Wyatt returned to his car as Sergeant Lake directed but deposited the knives instead through the open driver's side window.

As Wyatt walked back to where Sergeant Lake stood, Sergeant Lake noted that items remained in the right front pocket of his jeans. Sergeant Lake asked Wyatt whether he had "anything else" on him and stepped toward Wyatt as he finished his question. Sergeant Lake's arm extended slightly in the direction of Wyatt's right front pocket. At the same time, Wyatt began to stop and withdraw his arms from the area in front of his waist. Pausing only momentarily after

Wyatt stopped moving, Sergeant Lake patted down Wyatt's jeans, starting with the right front pocket. Sergeant Lake felt hard objects in his pocket, including one he believed could have been a knife. Following the conclusion of the frisk and at Sergeant Lake's request, Wyatt withdrew a third knife and a small amount of marijuana from the right front pocket.

Sergeant Lake asked Wyatt to join him in his patrol car as he wrote the traffic citation. During the discussion, Wyatt admitted having prior arrests for possession of marijuana. Wyatt also admitted there was a marijuana "roach" on the center console of his car. Sergeant Lake continued the traffic stop while a canine drug detection unit arrived to investigate Wyatt's vehicle. The dog's handler indicated that the dog gave a positive indication for contraband in the area of the front passenger-side floorboard and center console, prompting Sergeant Lake to search those areas. In doing so, Sergeant Lake discovered a loaded North American Arms .22 caliber revolver in the closed center console compartment.

Following Wyatt's indictment on the sole charge of being a felon in possession of a firearm, *see* 18 U.S.C. § 922(g)(1) (2000), he moved to suppress the revolver found in his car. Wyatt argued that Sergeant Lake lacked reasonable suspicion to conduct the frisk that lead to its eventual discovery. The district court disagreed, finding that Wyatt's conduct provided an adequate basis from which to imply his consent to be frisked, and that the circumstances presented a reasonable suspicion that Wyatt possessed additional weapons. Wyatt thereafter pled guilty to the § 922(g)(1) charge while reserving his right to challenge the district court's ruling on his suppression motion. *See* Fed. R. Crim. P. 11(a)(2). The district court imposed a fifty-one month custodial sentence followed by three years' supervised release. This appeal ensued.

II.

In this appeal, Wyatt renews his contention that Sergeant Lake's frisk violated the Fourth Amendment. He argues specifically that the circumstances of the stop did not provide Sergeant Lake with an adequate basis to frisk him after he discarded the knives that were in his left front pocket. In addition, Wyatt challenges Lake's search of his

vehicle as an independent violation of the Fourth Amendment. We examine these contentions in turn.

## A.

The standard of review applicable to the denial of a motion to suppress is mixed. The legal determinations underlying the denial of a motion to suppress are reviewed de novo. *United States v. Hamlin*, 319 F.3d 666, 671 (4th Cir. 2003). This includes determinations of reasonable suspicion and probable cause. *See Ornelas v. United States*, 517 U.S. 690, 699 (1996). However, the factual findings on which those determinations are made are reviewed for clear error. *Id.* Our review of the facts must be conducted in the light most favorable to the party prevailing below, *Hamlin*, 319 F.3d at 671, and we must give "due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, 517 U.S. at 699.

Fourth Amendment jurisprudence makes it clear that a police officer observing unusual conduct that "leads him reasonably to conclude . . . that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous," may both briefly stop those individuals for questioning and conduct a patdown of the outer surfaces of their clothing. *Terry v. Ohio*, 392 U.S. 1, 30 (1968). The prerequisites for a valid stop and frisk, therefore, are a reasonable suspicion of criminal activity and a concomitant apprehension of danger. *United States v. Burton*, 228 F.3d 524, 528 (4th Cir. 2002).

It is equally well-established that the same general principles govern an officer's ability to conduct a frisk of the driver or passengers of a vehicle during a traffic stop. *See United States v. Sakyi*, 160 F.3d 164, 167-69 (4th Cir. 1998) (analyzing various applications of *Terry* to traffic stops). However, in the context of a valid traffic stop, the analysis must take into account that the fact the individual to be frisked has already been stopped. *See Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977) (per curiam) ("In this case, unlike *Terry v. Ohio*, there is no question about the propriety of the initial restrictions on respondent's freedom of movement."). Accordingly, the inquiry focuses instead on whether any additional incursion by the officer,

beyond the stop itself, "was reasonable and thus permissible under the Fourth Amendment." *Id.*

Given the facts presented in this appeal, we have no difficulty sustaining the district court's determination of the validity of Sergeant Lake's frisk. The facts presented in this appeal are identical to those presented in *Mimms*. In *Mimms*, the officer observed the defendant driving with expired license plates. After stopping the vehicle, the officer asked the defendant to step out of the car and, at that point, "noticed a large bulge under respondent's sports jacket." *Id.* at 107. Similarly, here, after asking Wyatt to exit his car during a legitimate traffic stop, Sergeant Lake noted the presence of protruding objects at the bottom of the right front pocket of Wyatt's jeans. As in *Mimms*, this bulge in Wyatt's clothing "permitted the officer to conclude that [Wyatt] was armed and thus posed a serious and present danger to the safety of the officer." *Id.* at 112. The reasonableness of this conclusion is reinforced by Wyatt's earlier admission that he had knives in his left front pocket, and his deviation from Sergeant Lake's specific instructions as to where to place those weapons. Because these facts provide a reasonable basis to conclude that Wyatt may have possessed additional weapons as he returned from his car, we find no error in the district court's denial of Wyatt's motion to suppress based on the constitutionality of the frisk.[1]

## B.

In his brief, Wyatt also argues that even if Sergeant Lake's frisk was permissible, the subsequent warrantless search of his vehicle violated the Fourth Amendment because Sergeant Lake lacked probable cause of criminal activity. However, Wyatt did not raise this issue before the court in his motion to suppress. Where a criminal defendant advances on appeal an argument not raised before the district court, this Court's review is limited by the plain error standard. *See* Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 731-32

---

[1]Wyatt also contests the district court's conclusion that his conduct demonstrated his consent to be frisked. However, because the search constituted a valid protective frisk under *Mimms*, we do not reach this issue.

(1993). As a result, Wyatt must, at a minimum, identify obvious error affecting his substantial rights. *See Olano*, 507 U.S. at 732-34.

We find no error in Sergeant Lake's search of Wyatt's car. Under the Fourth Amendment, a police officer may extend an otherwise valid traffic stop beyond the time necessary to issue the citation if there is reasonable suspicion of other criminal activity. *United States v. Brugal*, 209 F.3d 353, 358 (4th Cir. 2000) (en banc). If the extension of the traffic stop results in probable cause to believe that the car contains contraband, officers may proceed with a warrantless search of the vehicle. *United States v. Carter*, 300 F.3d 415, 422 (4th Cir.), *cert. denied*, 537 U.S. 1187 (2002). That search may include any closed containers that the officers have "probable cause to believe . . . may contain contraband." *Id.*

Given the facts recounted in the district court's order, Sergeant Lake had both reasonable suspicion to extend the traffic stop and probable cause to search Wyatt's car. Sergeant Lake's frisk of Wyatt led to the discovery of marijuana in Wyatt's right front pocket, and Wyatt later admitted to having a marijuana "roach" on the center console of his car. Wyatt also acknowledged prior arrests for possession of marijuana. In addition, a sweep of Wyatt's car by a canine unit called to the scene following Wyatt's admissions indicated the possible presence of contraband in the area around the front passenger-side floorboard and center console. Because Wyatt admitted to having marijuana near the center console of his car,[2] and the canine unit indicated the presence of contraband close to the center console, *see id.* (discussing scope of search permitted by a positive indication of contraband), we find that Sergeant Lake had probable cause to search Wyatt's vehicle.

III.

We find the district court properly concluded that Sergeant Lake had a reasonable basis to conduct a protective frisk of Wyatt. Further, we find no Fourth Amendment violation in Sergeant Lake's decision

---

[2]Although Sergeant Lake did not find the "roach" Wyatt stated that he had left on the center console of his car, he eventually discovered the firearm hidden in a closed compartment in the center console.

to search Wyatt's car following Wyatt's admission that he had mari-
juana in his car and a positive sweep of the car's interior by a drug
sniffing dog. Accordingly, the district court's suppression order is

*AFFIRMED*.