THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State, Appellant,
v.
Kimberly Salters Mayzes and Charles T. Manley, III,
Respondents.
 
 
 

Appeal From Lexington County
 Alison Renee Lee, Circuit Court Judge

Unpublished Opinion No. 2006-uP-416
Heard November 9, 2006  Filed December 18, 2006   

AFFIRMED 

 
 
 
Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; and Solicitor Donald V. Myers, of Lexington, for Appellant.
Chief Attorney Joseph L. Savitz, III, of Columbia, for Respondents.
 
 
 

PER CURIAM:  The State appeals the circuit courts decision to suppress evidence based on a violation of Kimberly Mayzes Fourth Amendment rights.  We affirm. 
FACTS
On October 25, 2002, while at Lizards Thicket Restaurant, Kimberly Mayzes phoned the Springdale Police Department to report someone had stolen her pocketbook.  Officer Charles Flenniken responded and proceeded to interview Mayzes about the contents of the pocketbook. 
Rather than describing the normal contents of a pocketbook to Flenniken, such as a drivers license, credit cards, or a social security card, Mayzes informed Flenniken a prescription of Xanax was in the stolen pocketbook.  Flenniken noted Mayzes seemed anxious and more concerned about this prescription than the other contents.  
Flenniken questioned the manager and the waitress about the stolen pocketbook.  The waitress did not remember seeing Mayzes with the pocketbook in Lizards Thicket.  At this point, Flenniken told Mayzes to sit in a car driven by Lori Young.[1]  Flenniken admitted, at this time, he did not have a reasonable basis to believe a crime had been committed.  Based on Mayzes behavior, he merely believed something didnt appear to be right . . . .
Afterward, Flenniken phoned Dr. Counts, whom Mayzes said wrote the Xanax prescription.  Dr. Counts explained Mayzes had called several times to obtain additional prescriptions of Xanax.  
Subsequently, Flenniken exited the restaurant and walked towards Youngs vehicle.  After obtaining Youngs consent to search the automobile, Flenniken explained to Mayzes it was in her interest to search the vehicle to ensure the pocketbook was not there.  Mayzes exited the vehicle and went directly to the trunk, without searching anywhere else, and found her pocketbook.  
Mayzes thanked Flenniken for his help and was about to leave, but Flenniken insisted she accompany him back into the restaurant.  Flenniken testified that when they walked back into the restaurant, Mayzes was not free to leave.  The State conceded when Flenniken and Mayzes returned inside Lizards Thicket, Flenniken did not know if any criminal charges could be pressed against Mayzes.[2]    
Shortly thereafter, Flennikens supervisor, Corporal Matt Johnson, arrived at the scene.  While Johnson and Flenniken were discussing the situation, Mayzes walked away from the officers and towards a restaurant employee who was using a pay telephone.  Flenniken observed the employee yell out and raise his arms in the air.  Flenniken and Johnson walked towards the telephone to discover the source of the employees reaction. 
As the officers approached, they saw a bag of marijuana and arrested Mayzes.  After reading Mayzes her Miranda[3] rights the officers questioned Mayzes.  She revealed that Young also had marijuana.  Mayzes, Johnson, and Flenniken walked outside, and Flenniken asked Young if she had any drugs in her possession.  Young admitted to having marijuana in her pocket.  Consequently, Flenniken placed Young under arrest and transported Young and Mayzes to Lexington County jail.  
After the police booked Mayzes, she was held in a temporary holding area where she made a phone call.  Flenniken, also in the booking area waiting for paper work, overheard Mayzes state: Priscilla get Tommy to go to Lizards Thicket on 302 to pick up a package.  He would know what it was when he got there.  He would know what it was when he saw it.  Hurry up and get there in the next half hour.  It was (sic) stuck on the floor between the paper machines.[4]  
Flenniken questioned her about this conversation, Mayzes replied the package was a gold necklace that was a birthday present for her son.  Flenniken did not believe Mayzes, so he requested Officer Bouknight to investigate the contents of the package.  Instead of finding a gold necklace in the package, Bouknight found a baseball-sized red and white substance, later determined to be crystal methamphetamine.  
Consequently, Mayzes was charged with possession with intent to distribute marijuana, possession with intent to distribute marijuana within proximity of a school, and trafficking methamphetamines.  Co-defendant Charles Manley was charged with trafficking methamphetamine.  The defense made a motion to the circuit court to suppress all evidence on the basis of a violation of the Fourth Amendment and the fruit of the poisonous tree doctrine.  
The circuit court found: (1) Flenniken seized or detained Mayzes when he told her to sit in the car while he called Dr. Counts; (2) the seizure occurred even though no reasonable suspicion existed; and (3) as a result of the unlawful seizure Mayzes Fourth Amendment rights were violated.  Additionally, the circuit court suppressed all the evidence procured subsequent to Flennikens seizure of Mayzes, based upon the fruit of the poisonous tree doctrine.
The State contends the circuit court erred in suppressing the evidence because Mayzes was not seized within the meaning of the Fourth Amendment when Flenniken told her to sit in Youngs car.  In the alternative, the State asserts even if Mayzes was seized, a reasonable basis for the detention existed.   This appeal follows.[5]
STANDARD OF REVIEW
When reviewing a Fourth Amendment search and seizure case, we do not review the circuit judges ultimate determination de novo, rather we apply a deferential standard. 
State v. Khingratsaiphon, 352 S.C. 62, 70, 572 S.E.2d 456, 459-60 (2002).  This Court reviews the circuit judges ruling like any other factual finding, and we will reverse only if there is clear error.  Id.  Therefore, we will affirm if any evidence exists to support the circuit courts ruling.  Id.; see, e.g., State v. Missouri, 361 S.C. 107, 111, 603 S.E. 2d 594, 596 (2004) (When reviewing a Fourth Amendment search and seizure case, an appellate court must affirm the trial judges ruling if there is any evidence to support the ruling. The appellate court will reverse only when there is clear error.) (emphasis in original) (internal citation omitted); State v. Brockman, 339 S.C. 57, 66, 528 S.E.2d 661, 666 (2000) (explaining an appellate court reviews the circuit courts Fourth Amendment ruling like any other factual finding and reverses if there is clear error but affirms if there is any evidence to support the circuit court).
LAW/ANALYSIS
A. Mayzes seizure under the Fourth Amendment 
The Fourth Amendment provides The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . .  U.S. Const. amend. IV.  The right of an individual not to be arbitrarily seized by the government is one of our most important rights, and this right will be carefully guarded.  State v. Rodriquez, 323 S.C. 484, 490, 476 S.E.2d 161, 164-65  (Ct. App. 1996).  Any evidence seized in violation of the Fourth Amendment must be excluded.  Mapp v. Ohio, 367 U.S. 643, 655 (1961).
It is well established that warrantless searches and seizures by the police are per se unreasonable unless they fall within one of several recognized exceptions.  Katz v. United States, 389 U.S. 347, 357 (1967).  However, Fourth Amendment protection applies if there has been a search or seizure by the government. 
United States v. Jacobsen, 466 U.S. 109, 113-14 (1984).   Not all personal encounters with the police can be characterized as seizures.  Terry v. Ohio, 392 U.S. 1, 19-20 (1968).  
Whenever a police officer, by means of force or authority, has in some way restrained the liberty of a citizen, a seizure has occurred.  Id.  In other words, a person has been seized within the meaning of the Fourth Amendment whenever a police officer accosts [the] individual and restrains his freedom to walk away . . . .   Id. at 16.  E.g., Sikes v. State, 323 S.C. 28, 30, 448 S.E.2d 560, 562 (1994) (An individual is seized when an officer restrains his freedom, even if the detention is brief and falls short of arrest.).  
In determining whether a seizure has occurred, the correct inquiry is whether, considering all the circumstances surrounding the encounter, a reasonable person would have believed she was not free to leave. 
United States v. Mendenhall, 446 U.S. 544, 553-54 (1980).  If the person approached and questioned is free to ignore the polices questions and walk away, there has been no intrusion upon that persons liberty or privacy.  Id.       
The State argues a seizure did not arise until Mayzes recovered her pocketbook and Flenniken told Mayzes she was not free to leave.  Conversely, Mayzes argues a seizure occurred when she was told by Flenniken to sit in Youngs car while he called Dr. Counts.  We agree with
Mayzes.
At the time of the encounter with Mayzes, Flenniken was wearing a police uniform and had a badge; thus, Flenniken was acting with the authority of a police officer.  By means of this authority, Flenniken restrained and intruded on Mayzes liberty because he told her to sit in Youngs car without having a reasonable belief a crime had been committed.  Flennikens statement to Mayzes, telling her to go and wait in the car, was not a request, rather it was an order.  Flenniken did not hint or suggest that Mayzes should wait in the car.  Instead, he told her to sit in the car . . . .  (emphasis added).
A reasonable person would feel she was not free to leave when a police officer tells her to sit in a car.  A reasonable person would feel if she disobeyed the polices order to go where directed, she would get into more trouble.  Therefore, a reasonable person would not feel she was free to ignore Flenniken and simply walk away.  Mayzes testimony confirms this conclusion.
Mayzes testified it was apparent to her that Flenniken was a police officer because he wore a police uniform and had a badge.  She further testified when Flenniken told her to sit and wait, she believed she was not free to leave.  Additionally, when asked what she thought would happen if she attempted to leave the scene, Mayzes responded Flenniken would pursue her.  
Based on the foregoing, we cannot say the circuit court committed clear error in determining a seizure occurred when Flenniken told Mayzes to go and wait in Youngs car.  
B. Mayzes seizure was unreasonable 
Having determined to uphold the circuit courts ruling that Mayzes was seized, we must decide whether her Fourth Amendment rights were thereby violated.  The United States Constitution does not prohibit all searches and seizures but only unreasonable searches and seizures.  Elkins v. United States, 364 U.S. 206, 222 (1960).  It is well known the police may stop and briefly detain and question a person, even if no probable cause exists.  Terry, 392 U.S. at 20.  However, there must be a reasonable suspicion supported by specific and articulable facts, and any rational inferences drawn therefrom, that the person is involved in criminal activity.  Id. at 21.  
Flennikens testimony shows he had no reasonable suspicion to believe a crime had been committed; at most, he merely had a hunch.  The following is an excerpt from Flennikens cross-examination by Mayzes trial counsel:

 
 
 Q: 
 Im going to repeat the question.  The question is at the point in time that you had a hunch that a red flag was raised, thats the point in time that you told her
 [Mayzes] to go sit in the vehicle.
 
 
 
 
 A:
 Correct.
 
 
 
 
 Q:
 And at that point in time, its nothing but a mere hunch.
 
 
 
 
 A:
 Correct.
 
 
 
 
 Q:
 Because you told the court that you had no reasonable basis at that time to believe that a crime was being committed.
 
 
 
 
 A:
 Correct.
 
 
 
 
 Q: 
 Nevertheless, you told her that she needed to go sit in the vehicle.
 
 
 
 
 A:
 Correct.
 
 

Intrusions upon constitutionally guaranteed rights must be based on more than inarticulable hunches.  Terry, 392 U.S. at 22.  Additionally, United States v. Burton, 228 F.3d 526 (4th Cir. 2002), supports the circuit courts conclusion.  
On the afternoon of March 4, 1998, while at a payphone in Laurens, South Carolina, four police officers approached Kenneth Burton. 
United States v. Burton, 228 F.3d 524, 526 (4th Cir. 2000).  Officer Tracy Burke identified himself as a police officer and requested Burton provide him with identification.  Id.  Rather than complying with the request, Burton did not respond.  Id.  The officers repeated the request for identification several times, but Burton remained silent.  Id.  Thereafter, the officers asked Burton to remove his right hand from his coat pocket, but Burton failed to comply with the request.  Id.  The officers repeated their request, however Burton did not respond.  Id.
Office Burke positioned himself behind Burton and plunged his hand into Burtons coat.  Id.  Burton opposed, and a struggle followed, during which the remaining three officers wrestled Burton to the ground.  Id.  Burton pointed a gun at Officer Burke and tried to fire, but the gun was jammed and did not fire.  Id.  Burton was indicted for violation of state[6] and federal[7] law.  Id.  
At the federal district court, Burton moved to suppress the firearm as fruit of an illegal search.  Id.  At the evidentiary hearing, Officer Burke testified that at the time he approached Burton, he had no reason to suspect that Burton was engaged in criminal activity . . . .  Id.  The federal court denied Burtons motion; subsequently, Burton was convicted and sentenced to 115 months imprisonment.  Id.  Burton appealed to the Fourth Circuit Court of Appeals.  Id.
The Fourth Circuit reversed the district court and concluded Officer Burke did not have reasonable suspicion for the search; therefore, Officer Burkes actions constituted an illegal search.  Id.  In reaching this conclusion, the Fourth Circuit recognized Officer Burkes testimony confirmed he had no objective facts that would justify reasonable suspicion.  Id.  at 528. 
As mentioned above, in addition to the federal charges, Burton was indicted on state charges.  Burton, 356 S.C. at 263, 589 S.E.2d at 8.  Burton unsuccessfully made a motion to the circuit court to grant a directed verdict in his favor because the search was not supported by reasonable suspicion.  Id. at 265, 589 S.E.2d at 9.  On appeal, this Court reversed the circuit court, concluding the search was not supported by reasonable suspicion and was based on an inchoate and unparticularized suspicion or hunch.  State v. Burton, 349 S.C. 430, 438, 562 S.E.2d 668, 672 (Ct. App. 2002) (internal quotations omitted) overruled on other grounds by State v. Burton, 356 S.C. 263, 589 S.E.2d 8 (2003).  
The South Carolina Supreme Court overruled this Court because the illegal search issue was not preserved.   Burton, 356 S.C. at 265, 589 S.E.2d at 9.  However, the Supreme Court agreed with this Court on the ruling regarding the illegality of search and seizure.  Id.  (We agree with the Court of Appeals that the search and seizure of Burton was illegal and we look with disapproval on the officers conduct leading up to the seizure.)  
Just as in the Burton case, Flenniken testified he had no reasonable suspicion that criminal activity was afoot when he told Mayzes to sit in the car.  As such we hold some evidence exists to uphold the circuit courts determination that Mayzes Fourth Amendment rights were violated when Flenniken told Mayzes to wait in Youngs car.
C. Exclusion of evidence as a result of Mayzes illegal seizure
In addition to holding Mayzes Fourth Amendment rights were violated, the circuit court used the fruit of the poisonous tree doctrine to suppress all the evidence procured from Flennikens seizure of
Mayzes.  
The fruit of the poisonous tree doctrine, most often associated with violations of the Fourth Amendments prohibition of unreasonable searches and seizures, prohibits the use of evidence obtained directly or indirectly through an unlawful search or seizure.  Wong Sun v. United States, 371 U.S. 471, 484 (1963).  
In this case, the circuit court concluded Mayzes Fourth Amendment rights were violated when she was seized, and any evidence obtained from that unlawful seizure was excluded.  This evidence included: the bag of marijuana found at Lizards Thicket; the statements made by Mayzes while she was in the holding area, which were overheard by officers Flenniken and Kelly; and the baseball-sized crystal methamphetamine.  
The circuit court did not commit clear error in using the fruit of the poisonous tree doctrine to exclude the evidence obtained as a result of Mayzes unlawful seizure. 
CONCLUSION
Although this Court in no way condones Mayzes possession of illegal substances, and we recognize the State makes a compelling argument, we must uphold the circuit courts ruling because we are constrained by the Fourth Amendment and the applicable standard of review.   
Accordingly, the circuit courts decision is 
AFFIRMED.  
HEARN, C.J., KITTREDGE, and WILLIAMS, JJ., concur.

[1] Apparently, Young and Mayzes came in the same car to Lizards Thicket. 
[2] Flenniken gave contradictory testimony as to whether he thought a crime had or was being committed at this time.  For example, at one point he testified: I did not know if I had a charge at that point to press charges against her for trying to obtain a controlled substance by fraud.  Conversely, he also stated: At that point, I believed that a crime had been committed and that she [Mayzes] had committed it. 
[3] Miranda v. Arizona, 384 U.S. 436 (1966). 
[4] In addition to Flenniken, Officer Kelly overheard Mayzes conversation.  
[5] A pre-trial order granting the suppression of evidence, which significantly impairs the prosecution of a criminal case, is directly appealable.  State v. McKnight, 287 S.C. 167, 168, 337 S.E.2d 208, 209 (1985); see S.C. Code Ann. § 14-3-330(2)(a) (1976).  
[6] Burtons state violations included two counts of assault while resisting arrest and two counts of assault with intent to kill.  State v. Burton, 356 S.C. 259, 263, 589 S.E.2d 6, 8 (2003).
[7] Burtons federal violation was unlawful possession of a firearm by a felon.  18 U.S.C. § 922(g) (West 2006).