# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2909

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Ira Earl Johnson, also known as, | * | |
| Earl Mitchell, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: February 12, 2003

Filed: April 25, 2003

_____

Before WOLLMAN, HEANEY and MELLOY, Circuit Judges.

_____

HEANEY, Circuit Judge.

Ira Earl Johnson was convicted of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). He appeals the district court's denial of his pre- and post-trial motions to suppress evidence obtained and statements made during what he contends was an illegal seizure. We affirm.

# BACKGROUND

On April 24, 2001, Hennepin County Deputy Sheriff Jason Engeldinger was assigned to security detail at the Century Plaza Building in downtown Minneapolis. Three other officers were on duty in the same capacity. At about 9:25 a.m., Engeldinger's attention was drawn to the sound of very loud yelling and profanity, apparently coming from outside the building. When he turned in the direction of the commotion, he observed Johnson and a woman later identified as Willie Pearl Evans. Johnson was directly facing Evans, gesturing and speaking in a loud tone. Evans was leaning against a parked vehicle. According to Engeldinger, Evans appeared to be frightened and was backing away from Johnson. At this point, Engeldinger, accompanied by Deputy Bunton and Security Officer Elmore, approached Johnson. With Engeldinger on one side of Johnson and Elmore on the other, Engeldinger asked Johnson to come toward the officers to speak with them. Johnson complied. Engeldinger requested identification. Johnson produced a Minnesota driver's license, which Engeldinger took and examined. As Engeldinger was in the process of verifying Johnson's identification, Johnson began running from the scene. Engeldinger and the other officers gave chase. While he was running, Johnson tripped over a curb. When the officers reached him, Johnson was still on the ground with his hands beneath him. Concerned that Johnson may be trying to conceal a weapon, Engeldinger told Johnson to show his hands. After Johnson refused, Engeldinger deployed pepper spray. Eventually the officers were able to bring Johnson's hands from beneath his body and handcuff him. When they rotated Johnson onto his back, they observed a silver handgun lying beneath him. During this encounter, Johnson made incriminating statements about possessing the gun.

Johnson was charged in district court with being a felon in possession of a firearm and ammunition. Prior to trial, he moved to suppress the gun and statements, claiming that they were the fruits of an illegal seizure. The district court referred the matter to a magistrate for a report and recommendation, and on July 18, 2001, an

evidentiary hearing was held on the matter. Deputy Engeldinger testified at this hearing, as did James Mazzon, an agent for the Bureau of Alcohol, Tobacco, and Firearms. Evans was not called by either party. Based on the evidence adduced at this hearing, the magistrate judge recommended that Johnson's suppression motion be denied, reasoning that Deputy Engeldinger had a sufficient basis for conducting an investigatory detention of Johnson.

Shortly after the report and recommendation was filed, Johnson located Evans. The magistrate held a second evidentiary hearing on Johnson's suppression motion, at which Evans testified about her recollection of what had happened. She stated that she was an old friend of Johnson's wife, and that, on the morning of this incident, she and Johnson were surprised and happy to see one another and engaged in some conversation. According to Evans, she was not scared of Johnson, and he was not yelling at her. Rather, they were talking about their respective families and updating each other on various life events. During this time, Evans was leaning against a parked vehicle, but she stated she was not backing away from Johnson. While her testimony varied in some respects from Engeldinger's,[1] she confirmed that they were having a conversation, speaking in loud voices, using profanity, gesticulating, and were close to one another as they spoke. Based on Evans's testimony, the magistrate concluded that Engeldinger could not have reasonably suspected that Evans was in danger of being assaulted by Johnson. Thus, the magistrate recommended to the district court that Johnson's motion to suppress be granted.

The district court rejected the magistrate's report and recommendation, and instead found that the initial encounter between Johnson and the officers was consensual in nature. In so doing, the district court focused its attention on the fact

---

[1]For instance, Engeldinger stated that he had observed Johnson making profane gestures to a passing squad car, whereas Evans claimed that she did not see such a display.

that Engeldinger did not use words of coercion during the encounter with Johnson, but rather requested Johnson's compliance. Finding no seizure took place, the court found it unnecessary to consider whether Engeldinger harbored any suspicion that criminal activity was afoot.

At trial, Johnson presented essentially the same evidence that had been presented at the suppression hearings: Engeldinger again testified that he heard yelling, went outside the building and saw Johnson speaking loudly to Evans and using lots of profanity; Evans again testified that she was not frightened and that the two were not arguing, but were speaking in loud tones, swearing, and emphatic in their gestures. After being found guilty, Johnson renewed his motion to suppress. The district court denied that motion, and this appeal followed.

## DISCUSSION

We begin our analysis by determining the nature of the encounter between Johnson and the law enforcement officers. As we have previously explained,

> Supreme Court jurisprudence has placed police-citizen encounters into three tiers or categories: First, there are communications between officers and citizens that are consensual and involve no coercion or restraint of liberty. Such encounters are outside the scope of the Fourth Amendment. Second, there are the so-called Terry[2]-type stops. These are brief, minimally intrusive seizures but which are considered significant enough to invoke Fourth Amendment safeguards and thus must be supported by a reasonable suspicion of criminal activity. Third, there are highly intrusive, full-scale arrests, which must be based on probable cause.

United States v. Poitier, 818 F.2d 679, 682 (8th Cir. 1987).

---

[2]Terry v. Ohio, 392 U.S. 1 (1968).

-4-

In this case, Johnson contends that the encounter was a <u>Terry</u>-type seizure, and that Deputy Engeldinger could not have harbored any reasonable suspicion that Johnson was engaged in criminal activity to justify an investigative stop. The government suggests that Johnson participated in a voluntary conversation with Engeldinger, requiring no justification under our Fourth Amendment jurisprudence. In the alternative, the government argues that if Engeldinger had, through his words and actions, seized Johnson, the limited intrusion was warranted by a reasonable suspicion that Johnson was committing a crime or would commit one in the imminent future.

In determining whether a person has been seized for Fourth Amendment purposes, the relevant question is whether, in view of the totality of circumstances surrounding the incident, a reasonable person would have believed he was free to leave. <u>INS v. Delgado</u>, 466 U.S. 210, 215 (1984) (citing <u>United States v. Mendenhall</u>, 446 U.S. 544, 554 (1980) (opinion of Stewart, J.)). We consider these matters on a case-by-case basis, as "[n]o litmus-paper test exists for distinguishing a consensual encounter from a seizure." <u>United States v. Ninety One Thousand Nine Hundred Sixty Dollars</u>, 897 F.2d 1457, 1461 (8th Cir. 1990). "The test is necessarily imprecise, because it is designed to assess the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation." <u>Michigan v. Chesternut</u>, 486 U.S. 567, 573 (1988). Some circumstances that inform the determination of whether a seizure took place include: officers positioning themselves in a way that limits the person's freedom of movement, <u>United States v. White</u>, 890 F.2d 1413, 1416 (8th Cir. 1989), the presence of several officers, the display of weapons by officers, physical touching, the use of language or intonation indicating compliance is necessary, the officer's retention of the person's property, or an officer's indication that the person is the focus of a particular investigation, <u>Ninety One Thousand Nine Hundred Sixty Dollars</u>, 897 F.2d at 1461 (citing <u>Mendenhall</u>, 446 U.S. at 554, <u>United States v. Campbell</u>, 843 F.2d 1089, 1093 (8th Cir. 1988), and <u>United States v. Nunley</u>, 873 F.2d 182, 185 (8th Cir. 1989)); <u>see</u>

also Florida v. Royer, 460 U.S. 491, 503 n.9 (noting that officers taking possession of defendant's airline ticket, luggage, and identification contributed to determination defendant had been seized because "[a]s a practical matter, Royer could not leave the airport without them").

Under the circumstances, we cannot endorse the district court's view that the encounter between Johnson and the officers was completely consensual. As Johnson was engaged in conversation with Evans, Engeldinger approached, believing that an assault was imminent. At the time, Engeldinger was flanked by two fellow uniformed officers. Engeldinger interrupted, and asked Johnson to leave his conversation and join Engeldinger and the other officers several feet from Evans. Once there, Engeldinger questioned Johnson as to what was happening between him and Evans. Engeldinger stood on one side of Johnson, and Officer Elmore stood on Johnson's other side. Engeldinger then asked to see Johnson's identification. When Johnson complied by showing his driver's license, Engeldinger took possession of it. At no time was Johnson informed that he may go about his business, or that he could elect not to comply with Engeldinger's suggestions.

A reasonable person would not believe that he was free to leave a scene where three uniformed officers drew him away from their party, stood closely at either side of him, and took possession of his personal property – here, his driver's license – while conducting a brief interrogation. The district court was swayed by the fact that Engeldinger politely questioned Johnson rather than made demands of him. The district court's focus on Engeldinger's tone and language is misguided. We again reiterate that it is the totality of circumstances, not one particular detail, that we consider when determining if a seizure occurred. Here, those circumstances suggest that an investigative seizure took place.

Nonetheless, we find that the seizure was justified. It is well established that a law enforcement officer may stop and briefly question an individual if the officer

has a reasonable suspicion that the person has committed or is about to commit a crime. United States v. Brignoni-Ponce, 422 U.S. 873, 881-82 (1975). Here, Engeldinger testified that he heard yelling, and turned and saw Johnson standing close to a woman, facing her, speaking emphatically and loudly to her, gesturing with his hands, using profanity.[3] Engeldinger perceived the woman to be frightened and backing away from Johnson. Based on these facts, Engeldinger could have reasonably suspected that an assault was imminent. That his belief may have been mistaken is of no accord; Engeldinger did not violate Johnson's Fourth Amendment rights by briefly seizing him and investigating the situation. Once Johnson took flight, the officers were permitted to give chase and subdue him because of their reasonable suspicion that he may be carrying a weapon.

## CONCLUSION

We agree with the magistrate judge that the circumstances in this case presented something more than a voluntary conversation – the officers here conducted an investigatory seizure of Johnson. The seizure, however, was justified by the officers' reasonable suspicion that Johnson was engaged or would imminently be engaged in criminal conduct. Accordingly, we affirm the district court's denial of Johnson's suppression motions.

---

[3]Although the magistrate who held the evidentiary hearings found Evans to be more credible than Engeldinger where their testimony diverged, and we give deference to such findings, Anderson v. City of Bessemer City, 470 U.S. 564, 575 (1985), the two agreed on the facts as outlined above, with Evans adding that, considering the circumstances, a person may have misinterpreted the conversation as an argument.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.