# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 03-3008

United States of America,           *
                               *

        Plaintiff - Appellee,     *   Appeal from the United
                               *   States District Court
      v.                     *   for the Southern
                               *   District of Iowa
                               *
Shelby Lamont Miller,        *     [UNPUBLISHED]
                               *
        Defendant - Appellant.  *

Submitted:  May 12, 2004
Filed:  July 1, 2004

Before BYE, HAMILTON[1], and HANSEN, Circuit Judges.

PER CURIAM.

---

[1]The Honorable Clyde H. Hamilton, United States Circuit Judge for the United States Court of Appeals for the Fourth Circuit, sitting by designation.

Shelby Miller (Miller) appeals from a district court[2] judgment entered following his conditional guilty plea and sentencing to the charge of possessing cocaine base (crack) with the intent to distribute, and aiding and abetting the same, 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Miller's guilty plea was conditioned on his right to challenge on appeal the district court's denial of his motion to suppress. Finding no error in the district court's denial of Miller's motion to suppress, we affirm.

I

A

On August 16, 2002, Officer Jeff Collins (Officer Collins) of the Quad City Metropolitan Enforcement Group (MEG) received a page on his duty pager from an unidentified caller. The caller reported suspected drug dealing in Room 64 of the Twin Bridges Motel, 221 15th Street, Bettendorf, Iowa.[3] In this regard, the caller reported observing a lot of people traffic, coming and going from Room 64.

The motel rooms of the Twin Bridges Motel were known to local law enforcement officers as the often situs of illegal drug trafficking activity. Indeed, Officer Collins testified at the suppression hearing that, prior to August 16, 2002, he and other members of MEG had responded to this same motel on similar complaints of suspected illegal drug trafficking an average of once every three weeks and often obtained information that drug dealing, mostly involving crack, took place in the

---

[2]The Honorable Ronald E. Longstaff, Chief Judge, United States District Court for the Southern District of Iowa.

[3]At the hearing on Miller's motion to suppress, Officer Collins testified that in August 2002, his duties with respect to the MEG included supervising the Hotel Interdiction Drug Enforcement Group. To aid the mission of this group, local motels and hotels were given a pager number to contact MEG to report any suspected drug dealing or other illegal activity.

rooms. On some of these occasions, the officers found crack in their search of the suspected motel rooms.

In accord with past practice, Officer Collins and two other law enforcement officers, Officers Chad Cribb and Chad Brodersen, attempted a "knock and talk" at Room 64. Officer Collins described a knock and talk as knocking on the door, trying to make contact with whoever is inside the room, and trying to obtain consent to search. Thus, at 8:00 p.m. on August 16, 2002, Officer Collins and the other two officers approached the door of Room 64. A badge on a neck chain worn on the outside of Officer Collins' shirt identified him as a police officer. Prior to knocking, the officers listened, but heard no noises emanating from inside the room. The officers then knocked on the door and identified themselves as maintenance. The officers then heard noises that "sounded like people moving in the room" and also heard a female voice say that she was in the shower. (Transcript of Suppression Hearing at 9).

After approximately three to five minutes, Sonja Gushiniere (Gushiniere), a female, answered the door. The officers identified themselves as law enforcement officers, advised the woman that they had received a complaint about drug trafficking in that room, and requested consent to search the room. Gushiniere consented.

All three officers entered the room. Officer Collins obtained some information from Gushiniere, while the other two officers searched the room. Gushiniere was cooperative, but appeared to Officer Collins to be nervous.

Following a search of Room 64, the officers found no physical evidence of illegal drug activity, and Officer Collins reported two or three months later to Special Federal Officer Mark Digney that the results of the search of Room 64 were "negative"-- apparently in terms of failing to find any crack or other evidence amounting to probable cause to charge. However, a screenless open window in the

room, when considered in combination with the noises emanating from the room between the knocking and Gushiniere's several minutes delay in opening the door, raised a suspicion in Officer Collins' mind that one or more persons might have exited through the open window prior to Gushiniere opening the door.[4]

Approximately two to three minutes after the officers concluded their physical search of Room 64, and while Officer Collins finished paperwork in connection with the search, there was a knock at the door. Officers Collins and Cribb answered the door and observed two men standing in the hallway. The men were later identified as Miller and Ira Crawford (Crawford). "Miller asked why the agents were in <u>his</u> room."[5] (District Court's April 25, 2003 Order at 1) (emphasis added). The officers then "asked the two subjects to come into the room, advising the subjects that the agents were present based on a drug complaint." <u>Id.</u> Miller and Crawford stepped into the room.

Once in the room, Officer Collins asked Miller and Crawford if either had any drugs or weapons on his person. Miller looked away and shook his head, prompting Officer Collins to ask Miller again whether he had any drugs on his person. This time, Miller admitted that he did. Officer Collins then asked Miller to place his hands against the wall and identify where the drugs were located. Miller complied with both requests, identifying the left pocket of his pants. Officer Collins then reached into that pocket and removed seven individually wrapped plastic baggies, each containing crack.[6] The officers also seized $564.00 from Miller's person. Following

---

[4]Room 64 was on the second story of the motel.

[5]Room 64 was in fact registered to Miller. However, the officers did not learn this information until approximately one hour after the search.

[6]The total weight of the crack in the seven baggies was approximately fifty-two grams.

his arrest and <u>Miranda</u> warnings, <u>see</u> <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), Miller admitted that he owned the crack.

## B

On December 11, 2002, a federal grand jury in the Southern District of Iowa charged Miller in a one count indictment with possession with the intent to distribute at least five grams of crack. 21 U.S.C. § 841(a)(1), (b)(1)(B). On April 15, 2003, Miller filed a motion to suppress. According to the motion, all evidence obtained pursuant to the warrantless seizure and search of his person at Room 64 was obtained in violation of the Fourth Amendment, U.S. Const. amend. IV. In this regard, Miller primarily argued that the officers did not have a reasonable, articulable suspicion that he was involved in drug trafficking to justify seizing him for the purpose of conducting investigatory questioning, which questioning led to his incriminating statement about illegal drugs on his person and their subsequent recovery. <u>See</u> <u>Terry v. Ohio</u>, 392 U.S. 1, 30 (1968) (holding police officer with reasonable suspicion supported by articulable facts that criminal activity "may be afoot" may briefly stop and detain a suspect to investigate the circumstances giving rise to that suspicion, even if officer lacks probable cause); <u>see also</u> <u>United States v. Sokolow</u>, 490 U.S. 1, 7 (1989) (same).

The government opposed Miller's motion to suppress on alternative grounds. First, the government argued that during the time that Officer Collins questioned Miller regarding whether he was in possession of any illegal drugs, Miller was not seized for Fourth Amendment purposes and therefore, the Fourth Amendment was not implicated. <u>See</u> <u>United States v. Johnson</u>, 326 F.3d 1018, 1021 (8th Cir.) (communications between police officers and citizens that are consensual and involve no coercion or restraint of liberty are outside scope of Fourth Amendment), <u>cert. denied</u>, 124 S. Ct. 425 (2003). Alternatively, the government argued that the totality of the circumstances added up to reasonable, articulable suspicion that Miller was

involved in illegal drug trafficking, such that Officer Collins was justified in conducting a Terry stop of Miller.

On April 25, 2003, the district court conducted a hearing on Miller's motion to suppress. Officer Collins was the only witness who testified. After hearing Officer Collins testify, hearing argument from both sides, and making findings of fact on the record, the district court entered an order denying Miller's motion to suppress on the ground that a reasonable, articulable basis existed for suspecting Miller's involvement in illegal drug trafficking activity and for briefly detaining him inside Room 64 in order to conduct investigatory questioning. The district court did not address the government's alternative argument that Officer Collins' investigatory questioning of Miller was a consensual encounter.

On April 30, 2003, Miller pled guilty to the single count in the indictment, but reserved his right to appeal the denial of his motion to suppress. On July 28, 2003, the district court sentenced Miller to 188 months' imprisonment and four years of supervised release.

This timely appeal followed. The only issue on appeal is whether the district court erred in denying Miller's motion to suppress.

II

Miller argues that the district court erred when it denied his motion to suppress. When reviewing a district court's denial of a motion to suppress, we review the district court's findings of fact for clear error and its application of the law to the facts de novo. United States v. Tyler, 238 F.3d 1036, 1038 (8th Cir. 2001). See also United States v. Arvizu, 534 U.S. 266, 275 (2002). We will affirm the denial of a suppression motion "unless we find that the decision is unsupported by the evidence, based on an erroneous view of the law, or the Court is left with a firm conviction that

a mistake has been made." United States v. Madrid, 152 F.3d 1034, 1037 (8th Cir. 1998) (citation and internal quotation marks omitted).

Miller argues that his seizure for the purpose of undergoing investigatory questioning was not supported by reasonable, articulable suspicion that he was involved in illegal drug trafficking and therefore, the incriminating evidence obtained against him as the result of such seizure was obtained in violation of the Fourth Amendment. We note at the outset that Miller's argument presumes that he was seized for purposes of Fourth Amendment jurisprudence during the time that Officer Collins questioned him in Room 64. The district court worked from the same presumption, never addressing the government's consensual encounter argument.

In resolving this appeal, we assume, arguendo, that Miller was seized for purposes of Fourth Amendment jurisprudence during the time of Officer Collins' investigatory questioning. Because we decide in favor of affirming the district court's reasonable, articulable suspicion determination, we need not and do not address the government's consensual encounter argument.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. In Terry, the Supreme Court first held that the Fourth Amendment requires that a brief investigatory stop of an individual be supported by reasonable, articulable suspicion that criminal activity "may be afoot." 392 U.S. at 30. This standard "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence . . . ." Illinois v. Wardlow, 528 U.S. 119, 123 (2000). However, the standard does require "a minimal level of objective justification" for the police action. Id.

In determining whether the Terry standard is satisfied, courts must consider the totality of the circumstances of the particular case, including the experience and

specialized training of the officers involved, which may allow them to make inferences and deductions from information "that might well elude an untrained person." Arvizu, 534 U.S. at 273 (internal quotation marks omitted). Moreover, courts should be guided by "common sense, nontechnical conceptions that deal with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Ornelas v. United States, 517 U.S. 690, 695-96 (1996) (internal quotation marks omitted). Finally, it is important to note that reasonable, articulable suspicion that criminal activity may be afoot may exist under the totality of the circumstances, even though "each of the[] factors alone is susceptible of innocent explanation." Arvizu, 534 U.S. at 277.

Here, there is no dispute that the officers searched Room 64 pursuant to a valid consent. Rather, the dispute focuses on the constitutionality of seizing Miller for the purpose of investigatory questioning, which questioning led to his making an incriminating statement and the discovery of crack on his person.

We hold that the following circumstances, when viewed in their totality and from the perspective of a trained law enforcement officer, amount to reasonable, articulable suspicion that Miller was engaged in illegal drug trafficking: (1) the Twin Bridges Motel was known to local law enforcement officers as the frequent situs of illegal drug trafficking activity, with MEG officers previously responding to the same type of complaints of illegal drug trafficking activity occurring in the individual motel rooms on average every three weeks; (2) investigations of such prior complaints sometimes resulted in the seizure of crack; (3) an anonymous tip of suspected illegal drug trafficking activity in Room 64 based upon the large amount of people coming and going from the room and the motel's reputation as a known situs of illegal drug trafficking activity; (4) only one person present in Room 64 and the screenless open window, although Officer Collins had heard noises coming from the room which sounded like more than one person moving about following his knock on the door and verbal identification as maintenance; and (5) Miller claimed Room 64 was

registered to him.[7] Moreover, the conclusion is inescapable that the scope and duration of Miller's seizure was reasonable for purposes of the Fourth Amendment. During his seizure for investigatory questioning, the officers did not physically touch Miller, nor order him to do anything. The seizure was as minimally intrusive as possible. Given the lawfulness of the seizure, Miller's incriminating statement that he had illegal drugs on his person and the subsequent recovery of such drugs from his left pant's pocket constitute lawfully obtained evidence.

### III

For the reasons stated herein, the judgment of the district court is affirmed.

---

[7]In support of its reasonable suspicion analysis, the government relies upon testimony by Officer Collins at the suppression hearing that, during the officers' search of Room 64, two plastic baggie corners commonly used to transport crack along with a metal spoon containing an unidentified white residue were discovered underneath the bed. We will not consider such testimony in reviewing the propriety of the district court's reasonable suspicion determination in light of the district court's finding in its written order that "[a]gents searched Room 64, and discovered no evidence of illegal drug activity." (District Court's April 25, 2003 Order at 1). Given the high occupant turnover rate of a motel room and that the nature of the white residue was never identified, the district court's finding in this regard is not clearly erroneous.