# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1161

_____

United States of America,

          Appellee,

v.

Glen Lamar Bailey,

          Appellant.

\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  Eastern District of Missouri.
\*
\*
\*

_____

Submitted: September 17, 2004
Filed: August 8, 2005

_____

Before MURPHY, McMILLIAN and BENTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

A jury convicted Glen Lamar Bailey of being a felon in possession of a firearm, possessing more than five grams of cocaine base with an intent to distribute, and possessing a firearm in furtherance of a drug trafficking crime. The district court[1] sentenced him to 360 months. Bailey appeals, arguing that the district court erred in denying his motion to suppress physical evidence and statements obtained from him as the result of an investigatory stop conducted without reasonable suspicion. We affirm.

---

[1]The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri.

On May 29, 2003, uniformed St. Louis police officers Duane Wells and Anthony Wozniak were patrolling in a marked squad car in the Walnut Park West neighborhood. Officer Wells, who had worked in the area for eleven years, knew it as a high crime neighborhood due to the prevalence of drug trafficking, robbery, burglary, and assault. Three days before Wells had investigated an attempted armed carjacking at an area Shell station, and he knew that the two carjacking suspects, described by the victim as black males in their early to middle twenties, remained at large. Earlier in the month, he had arrested a woman at the same station for using crack cocaine.

Around 1:00 a.m. officers noticed several individuals standing in the parking lot of an open Phillips 66 station which was located across the street from the Shell station where the carjacking had been attempted. They noticed that a young black male later identified as Bailey appeared to be using a pay phone under a broken light at the lot entrance. Officer Wells knew that for some three years the phone had been disconnected between 9:00 p.m. and 7:00 a.m., but he was unaware that regular service had recently been restored to it. He believed that the phone Bailey was talking into was inoperable and that he was only pretending to be having a conversation.

The officers pulled into the parking lot to investigate. When Officer Wells got out of the squad car, the individuals in the lot dispersed except for Bailey who remained at the pay phone with the receiver to his ear. As Wells approached him, Bailey turned toward the telephone, leaning against it and concealing the left side of his body. Wells had previously seen individuals make similar movements to conceal contraband or weapons from officers, and he suspected Bailey was trying to hide something from him. Wells asked Bailey what he was doing, and Bailey answered that he was using the telephone. Wells believed Bailey was lying and merely pretending to use it while casing the area or waiting to deal drugs. Because he feared for his safety and that of his partner, he patted Bailey down on the side he had

concealed from view. The officer felt an object in Bailey's waistband and asked if it was a handgun. When Bailey admitted that it was, Wells handcuffed him, placed him under arrest, and removed the weapon. The semiautomatic pistol was fully loaded with a bullet in the chamber.

Officer Wells advised Bailey of his Miranda rights and Bailey said he understood them. When asked why he was carrying the pistol, Bailey said that he had previously been robbed and required the gun for his own protection. Wells then conducted a search incident to Bailey's arrest and found more than 11 grams of crack cocaine in his left pocket, separated into 23 baggies. Bailey was informed again of his Miranda rights before being asked why he had the cocaine. He responded that it was to "make ends meet." The officers took him to the police station where he declined to make a written statement.

On July 2, 2003, a federal grand jury returned a three count indictment charging Bailey with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); possessing more than five grams of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a); and possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Before trial, Bailey moved to suppress the physical evidence and statements obtained as a result of the frisk, arguing that Officer Wells had acted without reasonable suspicion. The motion was referred to a magistrate judge[2] who found after an evidentiary hearing that the officer had reasonable suspicion to pat Bailey down; he recommended that the motion to suppress be denied. Bailey filed objections to the report and recommendation which the district court overruled. The district court found that reasonable suspicion had been raised by the late hour, the frequency of crime in the neighborhood, the officer's reasonable belief that Bailey was pretending to use an inoperable phone, and

---

[2]The Honorable Terry I. Adelman, United States Magistrate Judge for the Eastern District of Missouri.

Bailey's apparent attempt to conceal something from the police. The district court denied the motion and admitted the evidence at trial over Bailey's renewed objections. On October 15, 2003, a jury found Bailey guilty of all three counts charged in the indictment. He was sentenced to 360 months imprisonment, five years supervised release, and a $300 special assessment.

Bailey appeals, contending that Officer Wells lacked reasonable suspicion to justify a protective frisk. He points out that the Phillips 66 station was well lit and open for business despite the lateness of the hour, the phone he was using had always been capable of placing 911 calls even when otherwise inoperable, and his turning away from the officer to lean his left side on the pay phone could have been wholly innocent. Wells lacked reasonable suspicion to support the frisk Bailey argues, and the district court should not only have suppressed evidence of the gun, but also the crack and post arrest statements which were the fruits of the unlawful search.

The government responds that Wells had reasonable suspicion based on the time of night, his awareness of frequent crimes in the neighborhood, poor lighting in the area of the pay phone, similarity in Bailey's appearance and the description of the carjackers, the officer's reasonable belief that Bailey was pretending to speak into an inoperable phone and was lying when he claimed to be using it, and Bailey's apparent attempt to conceal the left side of his body when a uniformed officer approached.

When reviewing a district court's denial of a motion to suppress, we examine findings of fact for clear error, "giving 'due weight' to the inferences of the district court and law enforcement officials." United States v. Replogle, 301 F.3d 937, 938 (8th Cir. 2002). We review the district court's application of law to the facts de novo. United States v. Williams, 359 F.3d 1019, 1020 (8th Cir. 2004). "We must affirm an order denying a motion to suppress unless the decision is unsupported by substantial evidence, is based on an erroneous view of the applicable law, or in light of the entire

record, we are left with a firm and definite conviction that a mistake has been made." United States v. Rodriguez-Hernandez, 353 F.3d 632, 635 (8th Cir. 2003).

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons...that fall short of traditional arrest." United States v. Arvizu, 534 U.S. 266, 273 (2002). Such investigatory stops, permitting only a limited search of outer clothing aimed at discovering weapons, are not subject to the probable cause requirement of the Fourth Amendment. Terry v. Ohio, 392 U.S. 1, 20, 30 (1968). Instead, protective frisks are constitutionally reasonable "when a police officer 'observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous.'" United States v. Gray, 213 F.3d 998, 1000 (8th Cir. 2000) (quoting Terry, 392 U.S. at 30).

In determining whether an investigating officer had the requisite "reasonable suspicion" for a protective frisk, we are not guided by a "neat set of legal rules." Ornelas v. United States, 517 U.S. 690, 695-96 (1996) (internal quotations omitted). Rather, we must examine the "totality of the circumstances" in every case to see if the officer conducting the search had a "particularized and objective basis for suspecting legal wrongdoing." United States v. Arvizu, 534 U.S. 266, 273 (2002). This analysis looks at such facts as the "time of day or night, location of the suspect parties, and the parties' behavior when they become aware of the officer's presence." United States v. Dawdy, 46 F.3d 1427, 1429 (8th Cir. 1995). Also relevant are those inferences and deductions made by officers under the particular circumstances, since law enforcement officials are "trained to cull significance from behavior that would appear innocent to the untrained observer." United States v. Poitier, 818 F.2d 679, 683 (8th Cir. 1987). While reasonable suspicion is a "less demanding standard than probable cause and requires a showing considerably less than preponderance of the

evidence," <u>Illinois v. Wardlow</u>, 528 U.S. 119, 123 (2000), an officer may not rest on "inchoate and unparticularized suspicion or 'hunch,'" <u>Terry</u>, 392 U.S. at 123.

Considering the observations of Officer Wells "as a whole, rather than as discrete and disconnected occurrences," <u>Poitier</u>, 818 F.2d at 683, we cannot say that he lacked reasonable suspicion justifying an investigative search of Bailey. The encounter occurred in an neighborhood marked by frequent crimes involving firearms. This was a relevant fact to consider, especially in light of the attempted armed carjacking at an adjacent gas station a few days before. <u>See</u> <u>United States v. Sokolow</u>, 490 U.S. 1, 9-10 (1999); <u>United States v. Abokhai</u>, 829 F.2d 666, 670 (8th Cir. 1987) (officer's observations "heightened" due to armed robbery at another area gas station several days before). Also relevant was that the encounter occurred at 1:00 a.m. in an area of the parking lot the officer described as poorly lit.

Reasonable and particularized suspicion arose from these and other observed facts. Although Wells was unaware that regular service had been restored to the phone used by Bailey, a reasonable but mistaken belief may justify an investigative stop. <u>See</u> <u>United States v. Johnson</u>, 326 F.3d 1018, 1022 (8th Cir. 2003) (officer's reasonable if mistaken belief that the suspect was about to commit an assault); <u>United States v. Ornelas-Ledesma</u>, 16 F.3d 714, 718 (7th Cir. 1994) ("A mistaken premise can furnish grounds for a <u>Terry</u> stop, if the officers do not know that it is mistaken and are reasonable in acting upon it."). Wells suspected that Bailey was only pretending to make a call while preparing to commit a drug or theft crime. Bailey's reaction to his approach reasonably heightened the experienced officer's suspicion, for he turned in a manner that suggested he was attempting to conceal contraband. Bailey also told Wells that he was speaking on the telephone, a statement the officer reasonably believed was untrue based on his knowledge. Bailey's apparent attempt to conceal something provided Wells additional reason to suspect criminal activity. <u>See</u> <u>Arvizu</u>, 524 U.S. at 275-76 ("driver's slowing down, stiffening of posture, and failure to acknowledge a sighted law enforcement officer" relevant in determining

reasonable suspicion); Gordon, 231 F.3d at 756 ("nervous, evasive behavior is a pertinent factor in determining reasonable suspicion").

In combination these factors left Officer Wells with a reasonable and particularized suspicion that "criminal activity may be afoot" and that Bailey " may be armed and presently dangerous.'" Terry, 392 U.S. at 30. We conclude that Wells' protective frisk, narrowly limited to a search of Bailey's outer clothing for weapons, satisfied the requirements of the Fourth Amendment.

Bailey argues that Officer Wells' mistaken belief that the pay phone was inoperable for all but 911 calls did not justify the search. He first observes that feigning use of an inoperable pay phone is "hardly illegal and by itself does not justify stopping an individual." Only a mistaken belief that a suspect is engaged in undeniably criminal behavior can justify a protective frisk contends Bailey, citing Johnson, 326 F.3d at 1022 (investigating officer mistakenly believed the suspect was about to assault his companion), and United States v. Shareef, 100 F.3d 1491 (10th Cir. 1996) (officer given incorrect information that the suspect had outstanding federal warrants and was considered armed and dangerous). Bailey's argument fails to recognize that a combination of innocent conduct can provide officers with reasonable suspicion of criminal activity. See Sokolow, 490 U.S. at 9 (series of actions consistent with innocent travel amounted to reasonable suspicion). Officer Wells' belief that Bailey was pretending to use an inoperable phone was only one in a series of observations that led him reasonably to suspect criminal activity.

Bailey's reliance on United States v. Burton, 228 F.3d 524 (4th Cir. 2000) is similarly misplaced. In that case officers were in an area to serve warrants during daylight hours when they noticed the defendant standing by a pay phone in front of a convenience store. They asked him to identify himself even though they had no reason to suspect criminal activity at the time. Id. at 526, 528. After the defendant failed to respond to their requests or to remove his hand from his pocket, an officer

reached into the defendant's coat and found a handgun. Id. at 526. The Fourth Circuit held that the officer lacked reasonable suspicion at the time of the frisk; the defendant's presence at the telephone and his lack of cooperation were insufficient basis for suspicion. Id. at 529. The facts in Burton are in contrast to those here, where the search was conducted at night in a high crime area in which there had been an attempted armed carjacking a few nights before, where it appeared that the suspect was pretending to use an inoperable telephone, and where the suspect turned in an apparent attempt to conceal part of his body from the officers.

Bailey also suggests that it was unreasonable for Officer Wells to suspect that he was lurking to commit a crime since the officer admitted that an inoperable phone could be used to place a 911 call. The officer could reasonably have concluded that Bailey was not using the phone to notify authorities of an emergency, however, either because of the amount of time he was at the phone or because he turned away from the officer instead of welcoming his assistance. Officer Wells' suspicion of criminal activity was not unreasonable under all of the circumstances.

Because Officer Wells acted with reasonable suspicion in conducting the protective frisk, the district court did not err by admitting the immediate product of his search or its subsequent fruits. Accordingly, the judgment of the district court is affirmed.

McMILLIAN, Circuit Judge, dissenting.

I respectfully dissent. I believe that the facts, considered together, are not sufficiently significant to constitute reasonable suspicion of criminal activity. The facts are either not particularized (time of day and character of the neighborhood, partially matching description of suspects in recent crime), not especially suspicious (pretending to use the pay telephone) or not supported by an articulated reason for suspicion (turning movement).

For example, even though Bailey was present in a high-crime neighborhood at 1:00 a.m., he was not alone. The gas station was open and busy. In addition, the pay telephone Bailey was using was located close to relatively bright overhead lights above the gas pumps, as well as the lights of the gas station convenience store. Although the government argues that Bailey matched the general description the Shell station carjackers, who were described as black males in their twenties, matching that description in the predominately African-American Walnut Park West neighborhood is not meaningful. "Too many people fit this description for it to justify a reasonable suspicion of criminal activity." United States v. Eustaquio, 198 F.3d 1068, 1071 (8th Cir. 1999). Even if Wells reasonably believed that Bailey was pretending to use the pay telephone, such conduct is not criminal. As to Bailey's turning away as Wells approached, Wells did not point to any facts supporting a conclusion that Bailey's movement was furtive or evasive or suggestive of criminal activity.

In my view, Wells had a hunch that Bailey was engaged in criminal activity. However, a stop cannot be validated by "'what it turns up.'" United States v. Yousif, 308 F.3d 820, 828 (8th Cir. 2002) (quoting Wong Sun v. United States, 371 U.S. 471, 484 (1963)). An "inchoate and unparticularized suspicion or 'hunch'" is not enough for the Fourth Amendment. Terry v. Ohio, 392 U.S. 1, 27 (1968). Thus, I dissent.

_____