# United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-2581
_____

United States of America

*Plaintiff - Appellee*

v.

Anthony Redman

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids
_____

Submitted: April 12, 2022
Filed: July 12, 2022
_____

Before SMITH, Chief Judge, WOLLMAN and GRASZ, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

After the district court[1] denied Anthony Redman's motion to suppress evidence, Redman pleaded guilty to possession of a firearm by a prohibited person

_____

[1]The Honorable C.J. Williams, United States District Judge for the Northern District of Iowa, adopting the report and recommendation of the Honorable Mark A. Roberts, United States Magistrate Judge for the Northern District of Iowa.

in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Redman appeals, arguing that the arresting officer lacked reasonable suspicion to seize him and that evidence recovered after the seizure should have been suppressed. We affirm.

## I. Background

On November 26, 2019, the front desk worker of a Motel 6 in Cedar Rapids, Iowa, called 911 at 12:44 a.m. to report shots fired behind the motel. Officers described the area around the motel as a high-traffic, "high risk area" "that typically ha[d] a lot of criminal activity." Parole Officer Mark Smith was in the area and responded to the call on the radio. When Smith arrived at approximately 12:47 a.m., a Motel 6 employee directed him to the area of the alleged shots. At approximately the same time, Sergeant Matt Martin of the Cedar Rapids Police Department also arrived at the Motel 6 and spoke to an Uber driver. The Uber driver said that fireworks had been thrown from a car window as the car left the area and suggested that the fireworks were the basis of the call, not gunshots.

At about 12:49 a.m., Smith parked in and began walking through the motel parking lot, which was "fairly dark." The only people he saw were two individuals in an engine-running parked car. Smith approached the driver and asked him to roll down the window, at which point Smith could smell marijuana coming from inside the car and saw that both occupants were holding bottles of beer. After the occupants initially denied hearing shots fired, the passenger suggested that the sound was fireworks.

Smith asked both occupants for identification, but only the driver complied. The passenger, later identified as Redman, refused to provide identification and stated that he was not being detained and was leaving. Although Smith told him to remain in the car and called for assistance, Redman exited the car. Sergeant Martin arrived and began speaking with Redman, who told Martin that he was not detained and

could leave. As Redman began to walk away, Smith advised Martin that he had told Redman to "stay here."

As Redman unlocked a motel room door, Martin called out to and quickly approached him, grabbing the back of Redman's jacket when he turned the door handle. Redman nevertheless began to enter the room, at which point Martin and another officer brought him to the ground and handcuffed him in the doorway. Martin thereafter discovered in and removed from Redman's coat pocket a loaded Glock Model 42 .380 semi-automatic firearm.

Redman was charged with being a felon in possession of a firearm. He moved to suppress the firearm and statements he had made during the search, arguing that he had been illegally seized by Martin. The magistrate judge conducted an evidentiary hearing and concluded that Smith's interaction with Redman began as a consensual encounter. Smith thereafter developed reasonable suspicion to support a Terry stop, however, based on the odor of marijuana, the open containers of beer in an engine-running vehicle, and the fact that this was the only occupied vehicle in a high-crime area following a shots-fired report. Martin was then justified in seizing Redman as part of that Terry stop to protect officer safety and maintain the status quo, and also because Martin had probable cause to believe that Redman had committed the offense of interference with official acts by refusing to stay in the vehicle. The district court overruled Redman's objections, adopted the magistrate judge's report and recommendation, and denied the motion to suppress.

## II. Discussion

"When reviewing the denial of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions de novo." United States v. Dickerman, 954 F.3d 1060, 1065 (8th Cir. 2020).

Police "officers may conduct brief investigatory stops of individuals if they have a reasonable articulable suspicion of criminal activity." United States v. Griffith, 533 F.3d 979, 983–84 (8th Cir. 2008) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)). "A *Terry* stop is justified when a police officer is able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." United States v. Slater, 979 F.3d 626, 629 (8th Cir. 2020) (internal quotation marks and citations omitted). We "examine the totality of the circumstances in every case to see if the officer conducting the search had a particularized and objective basis for suspecting legal wrongdoing. This analysis looks at such facts as the time of day or night, location of the suspect parties, and the parties' behavior when they become aware of the officer's presence." United States v. Bailey, 417 F.3d 873, 877 (8th Cir. 2005) (internal quotation marks and citations omitted).

A Terry stop is limited to "the least intrusive means of detention and investigation, in terms of scope and duration, that are reasonably necessary to achieve the purpose of the *Terry* stop." United States v. Sanford, 813 F.3d 708, 713 (8th Cir. 2016) (per curiam) (quoting United States v. Newell, 596 F.3d 876, 879 (8th Cir. 2010)). During a Terry stop, an officer may "take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop," including frisking a person for weapons if the officer has "articulable suspicion that the person is armed and dangerous." Pollreis v. Marzolf, 9 F.4th 737, 746–47 (8th Cir. 2021) (alteration in original) (first quote quoting United States v. Hensley, 469 U.S. 221, 235 (1985)).

The parties agree that Redman was not seized until Martin physically grabbed his jacket. We conclude that Martin had reasonable articulable suspicion to detain Redman at that time. Martin was investigating an early-morning report of shots fired near 1:00 a.m. in a high-crime area. That he had been told that the call may have pertained to fireworks did not alone end his investigation, however. Martin knew that

Redman was one of only two people present in the dark parking lot that was the alleged location of the shots fired; that Smith was a parole officer and had called for help; and that Redman had refused to identify himself and walked away against Smith's instructions to stay in the car.[2] Finally, Martin saw Redman attempting to enter a locked motel room, raising safety concerns. Given these circumstances, Martin had reasonable suspicion that Redman may have been involved in a shots-fired incident, which justified his decision to seize Redman and to perform a limited search to determine if Redman was armed. See Bailey, 417 F.3d at 877 (concluding that officer had "a reasonable and particularized suspicion" when encounter occurred at 1:00 a.m. in a poorly lit parking lot "in an [sic] neighborhood marked by frequent crimes involving firearms," defendant "turned in a manner that suggested he was attempting to conceal contraband," and officer reasonably believed that defendant was merely pretending to talk on the phone).

The judgment is affirmed.

_____

[2]Redman argues that as a parole officer Smith lacked authority under state law to detain him, so his instructions to Redman could not have supported Martin's seizure of Redman. Even assuming that Smith lacked such authority, Martin testified at the suppression hearing that he believed Smith had the ability to detain someone based on his peace officer certification and his authorization to use the Cedar Rapids Police Department's dispatch radio. "[A] reasonable but mistaken belief may justify an investigative stop." Bailey, 417 F.3d at 877.