UNITED STATES of America,
Plaintiff–Appellee,

v.

George E. MAHER, Defendant–Appellant.

No. 97–2915.

United States Court of Appeals,
Seventh Circuit.

Argued March 4, 1998.

Decided May 15, 1998.*

* We originally disposed of this appeal in an unpublished order dated March 23, 1998. In response to a motion from the government to publish the order, we have released this disposition as an opinion.

Kenneth M. Hays (argued), Office of the United States Attorney, South Bend, IN, for Plaintiff–Appellee.

Michael P. Rehak (argued), South Bend, IN, for Defendant–Appellant.

Before CUMMINGS, ESCHBACH, and MANION, Circuit Judges.

ESCHBACH, Circuit Judge:

After a jury trial, George E. Maher was convicted of possessing a firearm as a convicted felon in violation of 18 U.S.C. §§ 922(g), 924(a)(2). On appeal, Maher challenges the district court's denial of his motion to suppress evidence and the court's modification of his proposed jury instruction. We affirm the district court's decision.

In September 1995 at approximately 11:00 p.m., gunshots were fired around the 400 block of South Harris Street in South Bend, Indiana. Uniformed police officer Timothy Medich of the South Bend Police Department was dispatched to the location where the gunshots were heard. While traveling south on Harris Street, Officer Medich noticed two people walking down the middle of the street toward his patrol car. One of the individuals walked to the west side of the street and between some houses. The other individual, George Maher, moved to the sidewalk. As Maher approached Officer Medich's car, Officer Medich noticed that Maher was holding his right, front pants pocket. Officer Medich stopped and exited his patrol car, after which he asked Maher some questions including whether Maher had heard gunshots in the area. Maher said he had heard the gunshots and that it was his mother who had called the police. Officer Medich then said, "Why don't you come over here so I can pat you down for a weapon real quick." Maher did not consent, but instead ran away. Officer Medich followed Maher around the block and down an alley, eventually ending up at Maher's home on South Harris Street. Officer Medich followed Maher to the door of the house. Once inside, Officer Medich tackled and handcuffed Maher. Officer Medich then escorted Maher out of the house to conduct the pat down search. Officer Medich started to pat down Maher, after which Maher's father, George Maher, Jr., approached the officers and reached into his son's front pants pocket retrieving a firearm.

On appeal, Maher asserts that Officer Medich had no reasonable, articulable suspicion under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), to detain him on the street, ask investigatory questions, and later seize him. To justify a *Terry* stop, the officer must indicate specific and articulable facts taken together with rational inferences to warrant the intrusion. *Terry,* 392 U.S. at 21, 88 S.Ct. 1868. When this court considers the reasonableness of a *Terry* stop, the standard is objective: Would the facts available to the officer at the time of the seizure warrant a person of reasonable caution to believe that the action taken was appropriate? *United States v. Tilmon,* 19 F.3d 1221, 1224 (7th Cir.1994) (citation omitted).

Officer Medich had a reasonable, articulable suspicion that Maher had been, was, or was about to engage in criminal activity. At the suppression hearing, Officer Medich identified different factors supporting his actions. Officer Medich testified that the South Harris Street area was known for previous gunfire occurrences and that he had been dispatched due to the gunshots that had been fired immediately preceding his encounter with Maher. He also testified that Maher seemed very nervous and was "clutching" his front pants pocket as he approached the patrol car. Although Officer Medich stated that he was not sure if Maher was a victim or a suspect, these specific and articulable facts rendered reasonable Medich's request to pat down Maher.

Maher's flight to avoid the pat down increased Medich's suspicion, and therefore his decision to pursue Maher was also appropriate. The officer followed Maher around the block and down an alley, ending up in front of Maher's home. Officer Medich followed Maher to the door of the house. Inside Maher's home, Officer Medich tackled and handcuffed Maher. Here, Officer Maher was faced with a fluid situation, reacting to Maher's fleeing and entering the house. Police officers are permitted to graduate their responses to the demands of the circumstances they confront. *United States v. Weaver*, 8 F.3d 1240, 1243 (7th Cir.1993). Based on the totality of the circumstances, *see United States v. Green*, 111 F.3d 515, 519 (7th Cir.), *cert. denied*, — U.S. —, 118 S.Ct. 427, 139 L.Ed.2d 328 (1997), a reasonable person would perceive the facts available to Officer Medich warranted the officer's investigatory detention and seizure of Maher. *See Tilmon*, 19 F.3d at 1224.

Maher's second argument on appeal is that the district court abused its discretion by modifying one of Maher's proposed jury instructions. This court's analysis of whether the jury instruction was proper is two pronged: (1) does the jury instruction misstate or incorrectly state the law and, if so; (2) has the error prejudiced the complaining party? *Mary M. v. North Lawrence Community Sch. Corp.*, 131 F.3d 1220, 1225 (7th Cir.1997). Maher's proposed jury instruction stated in pertinent part:

> Federal law recognizes that a person who is a convicted felon and who is also a resident of the State of Indiana has a right to possess a firearm as long as he possesses it in his dwelling or on his property.
>
> .    .    .    .    .
>
> If you find that either or both defendants in this case were in possession of a firearm, but did so in his or their dwelling or on his or their property, then, **as a matter of law,** you **must** find the defendant or defendants not guilty.

The district court modified the jury instruction by taking out "as a matter of law" and substituting "may" for "must." Maher argues that this change impermissibly shifted the responsibility for the interpretation of the law to the jury. The government argues that the jury instruction is an incorrect statement of law and indeed, it is.

In general, state law determines whether a felon's civil rights have been substantially restored, thus allowing a convicted felon to possess a firearm under 18 U.S.C. § 921(a)(20). *United States v. Lee*, 72 F.3d 55, 57 (7th Cir.1995). Under § 921(a)(20), "[a]ny conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for the purposes of [§ 922(g)]...." 18 U.S.C. § 921(a)(20). In this context, the *Lee* court explained that a person is either treated as a convicted felon or is treated as though he has a clean record: "it's all or nothing." *Lee*, 72 F.3d at 57. Accordingly, a partial restoration of the right to possess firearms under Indiana law does not constitute a restoration of federal civil rights. *See id.* In other words, a felon that possesses a firearm without having his substantial civil rights restored does so at the risk of prosecution under § 922(g). *See United States v. McKinley*, 23 F.3d 181, 183–84 (7th Cir.1994) (Indiana statutory framework does not restore a convicted felon's civil rights in order to exempt the felon from prosecution under § 922(g)).

Maher argues that Indiana law allows citizens of the state, including convicted felons, to possess handguns in their dwellings. *Lucas v. State*, 501 N.E.2d 480, 481 (Ind.Ct.App. 1986). Therefore, Maher contends Indiana law provides for a narrow exception, the "dwelling exception" to § 922(g), which allows convicted felons who reside within the State of Indiana to possess firearms in their own home. Maher also relies on Seventh Circuit precedent to support his claim. *United States v. Wagner*, 976 F.2d 354 (7th Cir.1992). In *Wagner*, the defendant argued that he did not fall within the definition of a convicted felon because his civil rights had been restored at the end of his Indiana sentence. *Id.* at 355. We examined Indiana law to determine if the defendant's civil rights were restored and concluded that Indiana did not have a statute that explicitly restored civil rights to a convicted felon once his sentence was completed. *Id.* at 355–56. We concluded that Indiana placed significant restrictions on a convicted felon's right to possess a handgun, but noted that there might be an exception allowing a convicted felon to possess a handgun in his own home. *Id.* at 356. However, we declined to decide whether there was such a "dwelling exception" because the record showed the defendant was not in his dwelling when he possessed the handgun. *Id.* at 356–57.

A partial restoration of civil rights to a convicted felon, such as the dwelling exception, contradicts this circuit's precedent. *See Lee*, 72 F.3d at 57. Thus, the jury instruction was an incorrect statement of law. However, this incorrect statement of law worked in Maher's favor by presenting the possibility of a "dwelling exception" to the jury; thus, there is no need for a new trial. *See North Lawrence Community Sch. Corp.*, 131 F.3d at 1225.

The district court judgment is AFFIRMED.