# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 06-3685

_____

United States of America,              *
                                       *
            Appellant,                 *
                                       *     Appeal from the
     v.                                *     United States District Court
                                       *     for the District of Nebraska.
Jerome Ellis,                          *
                                       *         [PUBLISHED]
            Appellee.                  *


_____

Submitted: May 14, 2007
Filed: August 31, 2007

_____

Before MURPHY, HANSEN, and COLLOTON, Circuit Judges.

_____

HANSEN, Circuit Judge.

     The Government appeals the district court's order granting Jerome Ellis's motion to suppress evidence obtained from the search of his person and oral statements he made at that time and after he was arrested. After careful review, we reverse and remand for further proceedings.

I.


On December 17, 2005, two Omaha Police Officers approached a residence in Omaha intending to speak with Connie Miller. Previous narcotics investigations had been conducted at the residence, and Officers Eugene Watson and Joseph Baudler were following up with Ms. Miller, whom they considered to be a suspect. The officers were aware that drugs had previously been sold out of this house. Ms. Miller answered the door upon the officers' knock and invited them inside after they stated their purpose for the visit. Upon entering, Officer Baudler began conversing with Ms. Miller, and Officer Watson began observing two males sitting in the living room area.


Officer Watson, with twelve years on the force and experienced in drug investigations, noted that one of the men appeared nervous. The man, Jerome Ellis, stood up and sat back down two or three different times within the first few minutes the officers were in the house and fidgeted nervously. Ellis was a large man (around six-foot-two or -three inches tall and weighed approximately 270 pounds), and his nervous behavior concerned Officer Watson, prompting him to ask the three people in the house if anyone was carrying a weapon. Ms. Miller and the other man replied that they were not, but Ellis made no response.


Officer Watson then asked Ellis specifically if he had any weapons on his person, at which time Ellis moved his hand near his front pocket, but said nothing. This led Officer Watson to inform Ellis that he was going to conduct a pat-down search of Ellis to ensure the safety of the officers. Ellis told Officer Watson that he was not going to allow that and stood up. The officer was standing between Ellis and the door. Ellis then tried to move Officer Watson aside and push past him in an apparent attempt to leave. When Officer Watson grabbed Ellis's arm as he passed to detain him to conduct the pat-down, the two men lost their balance, and both fell onto the sofa. Officer Watson testified that he was attempting to control Ellis and prevent

him from reaching into his front pocket after they fell. Ellis then told the officer that all he had was "dope" in his pocket. Soon after, Ellis stopped his struggles and was handcuffed.

After Ellis was restrained, officers retrieved an amount of crack cocaine from Ellis's front pocket. He was transported to Central Station, where he was advised of his Miranda[1] rights and questioned. He subsequently admitted to obtaining a quarter ounce of the drug from an unknown source named Peanut. Ellis also stated that he usually obtained his drugs through Ms. Miller.

A grand jury returned a three-count indictment against Ms. Miller and Ellis on March 22, 2006. In Count I, Ellis and Ms. Miller were charged with conspiracy to distribute and possess with intent to distribute five grams or more of a mixture containing cocaine base, a violation of 21 U.S.C. §§ 841(a)(1), (b)(1), 846. Count II solely involved Ms. Miller, and Count III charged Ellis with knowingly and intentionally possessing with intent to distribute five grams or more of a mixture or substance containing cocaine base, a violation of 21 U.S.C. § 841(a)(1), (b)(1).

Ellis pleaded not guilty on April 21, 2006, and later filed a motion to suppress any physical evidence seized in connection with his December 2005 arrest and any statements he made at that time. Ellis argued that because he was not a suspect in any illegal activity at the house that he should have been free to leave, and that when he attempted to exit the house the officer blocked his exit. Ellis argued that there was no question of ensuring the officers' safety within the house because he was attempting to leave, which would have negated any safety concerns, and that Officer Watson had no reason to "tackle" him and hold him on the couch. Specifically, he argued that the evidence seized should be suppressed because the seizure was unlawful. He also

---

[1]Miranda v. Arizona, 384 U.S. 436 (1966).

contended that because the seizure was unlawful, his arrest and related statements were tainted by the illegal seizure and should be excluded.

A magistrate judge held an evidentiary hearing regarding the motion to suppress and recommended that Ellis's motion be denied. The magistrate judge agreed with the Government that the officer's seizure of Ellis was lawful based upon a reasonable suspicion that their safety was at risk, and that both of Ellis's statements, one made at the house and one at the station after being advised of his <u>Miranda</u> rights, were voluntary. However, after reviewing the transcript of the hearing before the magistrate judge and the magistrate's recommendation, the district court disagreed. The district court found that the seizure was unreasonable because there was not a reasonable suspicion on the part of the officers that their safety might be threatened, and that even if there was, permitting Ellis to leave the premises would have erased any safety concern. Finding the seizure illegal, the district court granted Ellis's motion to suppress the drugs found on Ellis and his statement made at the house, as well as the statements made at the police station. The Government appeals. Because we find that the district court's application of Fourth Amendment law was erroneous, we reverse.

## II.

"When reviewing a district court's grant of a motion to suppress, we review its factual findings for clear error and its application of law *de novo*." <u>United States v. Summage</u>, 481 F.3d 1075, 1077 (8th Cir. 2007) (internal quotation omitted). "[W]e are bound by the district court's findings of fact regarding the circumstances of the search unless we believe on the basis of the record as a whole that the district court clearly erred." <u>United States v. Rowland</u>, 341 F.3d 774, 778 (8th Cir.) (internal quotation omitted), <u>cert.</u> <u>denied</u>, 540 U.S. 1093 (2003). "We may reverse the district court's ultimate ruling . . . if the ruling reflects an erroneous view of the applicable law." <u>Id.</u>

"[T]he 'Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that searches conducted outside the judicial process without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions.'" United States v. Varner, 481 F.3d 569, 571 (8th Cir. 2007) (quoting Horton v. California, 496 U.S. 128, 133 n.4 (1990)). The Supreme Court has held that a reasonable fear of harm is sufficient to justify a seizure for a short period of time, in order to conduct a pat-down search, in certain circumstances. Terry v. Ohio, 392 U.S. 1, 29 (1968).

Justification for a protective pat-down based upon a fear for officer or bystander safety can arise after the commencement of either an investigative stop or a consensual encounter. United States v. Davis, 202 F.3d 1060, 1063 (8th Cir.), cert. denied, 531 U.S. 883 (2000). "To be constitutionally reasonable, a protective frisk must . . . be based upon reasonable suspicion that criminal activity is afoot." Id. at 1062. A protective frisk is only warranted if "specific articulable facts taken together with rational inferences" support the reasonable suspicion that a party was potentially armed and dangerous. United States v. Clay, 640 F.2d 157, 159 (8th Cir. 1981). These facts are viewed under an objective standard, and we consider the totality of the circumstances as known to the officer at that time. Id.; United States v. Glenn, 152 F.3d 1047, 1049 (8th Cir. 1998). We note that at the time of the incident with Ellis, Officer Watson had been an Omaha police officer for twelve years and had been involved in over 300 narcotics investigations. See generally United States v. Sadosky, 732 F.2d 1388, 1393 (8th Cir.) ("We note that these factual observations of the law enforcement agents are to be viewed as a whole and in light of the familiarity these agents have with the practices of narcotics couriers."), cert. denied, 469 U.S. 884 (1984).

Officers Watson and Baudler came to Ms. Miller's house to follow up on an earlier drug investigation that involved this location and Ms. Miller. Ms. Miller's

invitation to enter the house commenced a consensual encounter between the occupants of the house and the officers. Officer Watson, standing to the side while Officer Baudler spoke with Ms. Miller, noticed that Ellis's nervous behavior began immediately upon the officers' entrance into the house. Although initially a consensual encounter between the officers and the occupants of the house, from which Ellis was free to leave, the circumstances and Ellis's behavior gave rise to Officer Watson's reasonable safety concerns. See Davis, 202 F.3d at 1063 ("an individual's action during a consensual encounter may both crystallize previously unconfirmed suspicions of criminal activity and give rise to legitimate concerns for officer safety"). In Davis, we upheld as reasonable an officer's protective pat-down based on Davis's nervous movements and adjustment of his jacket while placing his hand in his pocket. Id. Here not only did Ellis act nervously and reach toward his pocket, the encounter took place in a house known for drug activity. See United States v. Cash, 378 F.3d 745, 748-49 (8th Cir. 2004) ("We have also previously noted that '[t]he possible danger presented by an individual approaching and entering a structure housing a drug operation is obvious. In fact, it would have been foolhardy for an objectively reasonable officer not to conduct a [Terry] frisk under the circumstances.'") (quoting United States v. Patterson, 885 F.2d 483, 485 (8th Cir. 1989)) (alteration in original), cert. denied, 544 U.S. 963 (2005); United States v. Maher, 145 F.3d 907, 909 (7th Cir. 1998) (holding that an officer had reasonable suspicion to justify detention of a suspect based on the fact the area was known for gunfire occurrences, the suspect's nervousness, and the fact he clutched his front pocket as he approached the officer). At no time prior to his suspicion-arousing conduct did Ellis clearly or directly indicate that he wanted to terminate the encounter, and upon being told he was going to be patted down, after his actions had aroused the experienced officer's suspicions, he advanced toward Officer Watson, attempting to "push past" him. (Tr. at 6.) Cf. United States v. Miller, 546 F.2d 251, 253-54 (8th Cir. 1976) (noting that the security concern claimed by the officers as justification for the seizure would not have been an issue if Miller had been allowed to leave as requested, specifically noting that there was no evidence that Miller had made any sort of threatening move or reached toward

his pockets).  By the time Ellis claims he made the attempt to leave, his behavior had already raised a reasonable suspicion that he was potentially armed, justifying Officer Watson's request to conduct a pat-down search.  It was the combination of Ellis's nervous behavior and the movement of his hand toward his pocket after he was questioned about a weapon that prompted the officer's decision to conduct a pat-down for his and his partner's safety.  Ellis's behavior in attempting to flee from that request, and the manner in which he did so, only served to support the officer's reasonable suspicions.  See Maher, 145 F.3d at 909 (noting that the suspect's attempt to flee the pat-down search only increased officer's suspicions). The totality of the circumstances in this situation, especially when viewed "from the vantage point of those versed in the field of law enforcement" demonstrates a sufficient basis to justify Officer Watson's pat-down search of Ellis.  Davis, 202 F.3d at 1063 (internal quotation omitted); see also United States v. Maltais, 403 F.3d 550, 555 (8th Cir. 2005) (holding that the officers "properly took some facts which might individually be innocent and viewed them in context and in light of experience to find that the totality of the circumstances gave rise to a reasonable suspicion" that justified the investigatory seizure), cert. denied, 126 S. Ct. 1345 (2006).

By the time Ellis tried to push past Officer Watson there was reasonable suspicion to justify a pat-down search, and an attempt to stop Ellis at that point was neither unreasonable nor a violation of Ellis's constitutional rights.  An officer can be shot from outside a house as well as from inside it.  Officers have the right to stop and briefly detain a person in order to conduct a pat-down search when circumstances justify such a seizure.  United States v. Davis, 457 F.3d 817, 822 (8th Cir. 2006), cert. denied, 127 S. Ct. 1386 (2007); see also Maher, 145 F.3d at 909 (finding it was not unreasonable for officer to follow suspect who fled the officer's request to the suspect to do a pat-down search); United States v. Robinson, 984 F.2d 911, 914 (8th Cir. 1993) (finding that encounter between officers and suspect was consensual and not a seizure of his person because, among other reasons, the officers did not use any

force to detain Robinson); <u>United States v. Jones</u>, 759 F.2d 633, 638 & n.4 (8th Cir.) (noting a brief detention to maintain the status quo during an initial inquiry may be reasonable), <u>cert.</u> <u>denied</u>, 474 U.S. 837 (1985); <u>United States v. Harley</u>, 682 F.2d 398, 402 (2d Cir. 1982) ("If there is sufficient reasonable suspicion to justify an investigatory stop, reasonable force may be used to effect that stop.") (cited in <u>Jones</u>, 759 F.2d at 638 n.4).

Absent a Fourth Amendment violation, Ellis's statement regarding the drugs in his pocket was voluntary and admissible. <u>See</u> <u>United States v. Marasco</u>, 487 F.3d 543, 548 (8th Cir. 2007) (reversing the grant of a motion to suppress because the defendant could not prove that a Fourth Amendment violation was the but-for cause of her statements); <u>United States v. Gipp</u>, 147 F.3d 680, 685 (8th Cir. 1998) (stating that because there was not an illegal seizure "the district court did not err in denying appellant's motion to suppress evidence and statements obtained as a result of the . . . investigatory stop"). For the same reason, there is also no need to suppress the statements Ellis made after he was given his <u>Miranda</u> rights at the police station.

## III.

Accordingly, we reverse the judgment of the district court and remand the case for further proceedings not inconsistent with this opinion.

_____