BALDOCK, Circuit Judge,
dissenting.
According to the district court, Officer Daley was called to investigate a report that a woman “heard a noise and believed someone may have been in her basement.” After concluding a fruitless fifteen-minute investigation of the house, Officer Daley saw Defendant walking toward the house. Daley had seen no one else in the vicinity. Daley then observed Defendant make an abrupt about-face upon seeing a police car drive past. His suspicions aroused, Officer Daley initiated an on-foot consensual encounter with Defendant. When eight to ten feet away from Defendant, Daley observed an exposed folding knife in Defendant’s right coat pocket. He also saw Defendant’s left hand resting on a large bulge in his left coat pocket. When Officer Daley asked Defendant if he had any weapons, Defendant said “no,” despite the visible knife in his pocket. Officer Daley then frisked Defendant and found, in addition to the knife, a .44 caliber revolver in the area of Defendant’s left pocket. On these facts, this Court concludes “there was no indication that [Defendant] was presently dangerous to Officer Daley or other citizens,” and that the frisk was unconstitutional. Court’s Op. at 788. Although the Court recognizes “a reasonable officer could conclude that [Defendant] was armed,” id., the Court ignores the totality of the circumstances and the serious threat that a suspected firearm posed to Officer Daley’s safety. Instead, the Court cavalierly dismisses Daley’s suspicion regarding a firearm as a mere “hunch.” Id. at 789. Because the Court’s holding disregards settled precedent and exposes officers to unreasonable dangers, I dissent.
I.
This case gives rise to two questions: (1) whether a protective frisk is ever permissible in the absence of reasonable suspicion that criminal activity is afoot, and if so, (2) whether Daley had a constitutionally justifiable basis for conducting a protective frisk in this case. Acknowledging the question is an open one, the Court assumes without deciding that a protective frisk is permissible without reasonable suspicion of criminal activity. The Court does not reach this first question because it concludes Officer Daley had no reasonable suspicion Defendant was “dangerous.” *791 Because the Court is incorrect on this point, I must address both questions.
Neither the Supreme Court nor the Tenth Circuit has decided whether an officer may lawfully frisk a person absent reasonable suspicion of criminal activity. The Supreme Court first recognized the concept of a stop and frisk, justified on suspicion less than probable cause, in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The Court in Terry held that an officer could temporarily detain and frisk a person based on reasonable suspicion that “criminal activity may be afoot” and the person “may be armed and presently dangerous.” Id. at 30, 88 S.Ct. 1868. Although the Terry Court treated a “stop and frisk” as essentially a single transaction, it offered different rationales for the “stop” and the “frisk.” The interest of “effective crime prevention and detection,” the Court said, justifies officers “approaching] a person for purposes of investigating possibly criminal behavior.” Id. at 22, 88 S.Ct. 1868. A frisk, however, is based on the “immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him.” Id. at 23, 88 S.Ct. 1868. So, although the Court said “[w]e merely hold today” that a “stop and frisk” was justified based on reasonable suspicion of criminal activity and dangerousness, the Court noted that “[e]aeh case of this sort will ... have to be decided on its own facts.” Id. at 30, 88 S.Ct. 1868.
Terry simply did not decide whether a frisk can take place absent reasonable suspicion of criminal activity. Justice Harlan made this clear in his concurring opinion, where he said he, unlike the majority, “would make it perfectly clear that the right to frisk in this case depends upon the reasonableness of a forcible stop to investigate a suspected crime.” Terry, 392 U.S. at 32-33, 88 S.Ct. 1868 (Harlan, J., concurring) (emphasis added). But Justice Harlan’s view did not win the day. The Terry Court said the limitations on protective frisks “will have to be developed in the concrete factual circumstances of individual cases.”[1] Id. at 29, 88 S.Ct. 1868. Although the Supreme Court has not addressed this issue, allowing a protective frisk based solely on officer safety best comports with its precedent. This is so for three main reasons.
A.
First, the strong governmental interest in officer safety is present even in consensual encounters. Courts cannot ignore the “need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest.” Terry, 392 U.S. at 24, 88 S.Ct. 1868. This need applies equally to investigative detentions and consensual encounters. In Pennsylvania v. Mimms, 434 U.S. 106, 98 *792 S.Ct. 330, 54 L.Ed.2d 331 (1977) (per curiam), the Court held that an officer could order a driver out of his vehicle during a traffic stop. The Court said, “We think it too plain for argument that the State’s proffered justification — the safety of the officer — is both legitimate and weighty.” Id. at 110, 98 S.Ct. 330. The Supreme Court has, admittedly, recognized that the magnitude of the threat to officer safety depends to some extent on the intrusiveness of the encounter. Knowles v. Iowa, 525 U.S. 113, 117, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998). But this hardly stands for the proposition that an officer’s safety is never at risk during a consensual encounter. “If a suspect is ‘dangerous,’ he is no less dangerous simply because he is not arrested.” Michigan v. Long, 463 U.S. 1032, 1050, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).
Even though a person is “free to leave” during a consensual encounter, I.N.S. v. Delgado, 466 U.S. 210, 215, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984), he may still feel threatened by police questioning. In Maryland v. Wilson, 519 U.S. 408, 414, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997) the Supreme Court concluded officers may order passengers to exit a validly stopped car, even though no reason exists to believe the passengers have committed any offense. The Court reasoned that “the possibility of a violent encounter stems not from the ordinary reaction of a motorist stopped for a speeding violation, but from the fact that evidence of a more serious crime might be uncovered during the stop.” Id. The Court said, “[T]he motivation of a passenger to employ violence to prevent apprehension of such a crime is every bit as great as that of the driver.” Id. The Court concluded the passengers presented a danger even though they were not suspected of any criminal activity. Particularly where, as here, an officer initiates an investigatory encounter based on some suspicious circumstances, the officer could easily feel threatened by an armed person and be justified in conducting a frisk. “The danger to officer safety that justifies a protective search” may arise even during a consensual encounter. United States v. Davis, 202 F.3d 1060, 1063 (8th Cir.2000).
Other situations could also lead an officer to fear for his safety during a consensual encounter. For example, a person might become belligerent or show signs of mental instability during a consensual encounter, even if the person’s actions do not give rise to suspicion of criminal activity. See United States v. Brown, 232 F.3d 589, 593-95 (7th Cir.2000) (holding a reasonable officer could perceive a threat to his safety from a potentially drunk person acting “erratically”). Not every threatening action is criminalized, and officers need not wait to be assaulted or injured before taking protective action. Terry, 392 U.S. at 23, 88 S.Ct. 1868. Rather, Terry’s officer safety rationale applies during “all legitimate investigative activities,” and justifies a frisk if the officer reasonably fears for his safety during a consensual encounter. United States v. Romain, 393 F.3d 63, 76 (1st Cir.2004).
In a case decided just this term, the Supreme Court upheld the right of officers to enter a home based on safety concerns, even without probable cause of criminal activity. Ryburn v. Huff, 565 U.S.-, 132 S.Ct. 987, 181 L.Ed.2d 966 (2012) (per curiam). In Ryburn, the officers were investigating rumors that a high school student had threatened to “shoot up” the school. Id. at 988. After initially ignoring the officers’ knocks, the student’s mother came to the front steps. Id. at 988. When asked whether any guns were in the house, the mother “responded by immediately turning around and running into the house.” Id. at 989 (internal alterations and quotation marks omitted). The offi *793 cers followed her into the house based on concerns for their safety. Id. The Supreme Court held the warrantless entry was reasonable because the officers could have feared “an imminent threat to their safety and to the safety of others.” Id. at 991. The Court did not discuss whether the officers had probable cause or reasonable suspicion of criminal activity, but held the entry was constitutional because the officers had “an objectively reasonable basis for fearing that violence was imminent.” [2] Id. at 992. Ryburn indicates that officer safety renders certain police actions reasonable regardless of probable cause or reasonable suspicion that criminal activity is afoot.
B.
Second, requiring reasonable suspicion of criminal activity would hamstring officers’ ability to investigate suspicious behavior. If an officer may not conduct a frisk unless he has reasonable suspicion a crime is afoot, then he must protect himself by entirely avoiding those he reasonably believes are dangerous but not necessarily engaged in criminal conduct. See United States v. Burton, 228 F.3d 524, 528 (4th Cir.2000). But this ignores the real possibility that an officer will only acquire suspicion a person is armed and dangerous after he has initiated the consensual encounter. Davis, 202 F.3d at 1063. At this point, the officer no longer has the option to avoid a confrontation. Furthermore, it ignores the fact that police officers have a responsibility to keep the public safe and investigate suspicious activity. The Supreme Court has long recognized that law enforcement officers may “approach[] an individual on the street or in another public place” and “put[] questions to him if the person is willing to listen.” Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). The Court has also recognized “the strong government interest in solving crimes and bringing offenders to justice.” United States v. Hensley, 469 U.S. 221, 229, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). But disallowing a protective frisk during consensual encounters would discourage officers from approaching and questioning the most dangerous citizens or those they suspect of criminal activity on less than reasonable suspicion. Officers would be free to initiate consensual encounters with apparently harmless citizens, but be required to avoid citizens who are armed and dangerous. Such a reading of Terry would be unreasonable.
C.
Third, requiring reasonable suspicion of criminal activity before a frisk would prevent officers from taking “reasonable steps to ensure their safety” during consensual encounters. Maryland v. Buie, 494 U.S. 325, 334, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). Under this approach, an officer only has two options if he suspects a person he has consensually encountered may be armed and dangerous. First, he may choose to end the encounter and walk away. This is a nonsensical option, because it requires the officer to abandon the legitimate and non-intrusive performance of his duties and exposes him to potential danger in effectuating his retreat. Second, the officer may continue asking questions in hopes of acquiring adequate suspicion of criminal activity to justify a frisk. But this requires the officer to remain in a *794 dangerous situation without taking any steps to ensure his safety. Officers should not be forced to decide between these equally bad options.
Obviously police officers may not frisk simply any person on the street who they suspect is armed. Officers must have reasonable suspicion the subject is “armed and presently dangerous.” Terry, 392 U.S. at 24, 88 S.Ct. 1868 (emphasis added). A citizen walking down the street carrying a knife or gun on his person does not necessarily present a danger to police or the public. But some instances certainly arise in which an officer can reasonably fear a person is dangerous during a consensual encounter. Therefore a valid frisk should not depend on reasonable suspicion that criminal activity is afoot.
II.
Turning to the facts of this case, Officer Daley had reasonable suspicion Defendant was both armed and dangerous. A reasonable suspicion inquiry must be based on the “totality of the circumstances, taking into account an officer’s reasonable inferences based on training, experience, and common sense.” United States v. Rice, 483 F.3d 1079, 1083 (10th Cir.2007). Defendant was the only person in the vicinity of a potential home break-in. Daley observed Defendant do a 180-degree turn when he caught sight of a police car. These facts were suspicious enough to warrant further investigation. “Officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation.” Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (emphasis added). Here, Defendant’s presence near the scene of a police investigation was at least enough to raise some suspicion, however slight, particularly because Defendant was the only person seen in the vicinity. Additionally, “nervous, evasive behavior is a pertinent factor in determining reasonable suspicion.” Id. Defendant’s 180-degree turn upon seeing a police car was an indication of nervousness that legitimately increased Officer Daley’s suspicion. These two facts, standing alone, were not enough for reasonable suspicion of criminal activity, but were at least enough to prompt further investigation. Officers are entitled to approach people and ask questions based on a hunch, or even with no suspicion at all. See United States v. Drayton, 536 U.S. 194, 200, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002).
Once Officer Daley initiated the consensual encounter, he quickly developed reasonable suspicion Defendant was armed. In fact, Officer Daley knew Defendant was armed with a knife because he saw the knife’s tip in Defendant’s right coat pocket. Furthermore, Officer Daley had reasonable suspicion Defendant was armed with a gun. Unlike in Terry, this suspicion was not based on the abstract proposition that a person involved in a particular crime may have a gun. Terry, 392 U.S. at 28, 88 S.Ct. 1868 (concluding it was reasonable to suspect men contemplating a daytime robbery would be armed). Instead, Daley’s suspicion was based on his direct observation that Defendant had “his left hand in his pocket” and “it appeared that there was something that was making it larger than just what an arm or hand would make a coat stick out.” In Minims, the Supreme Court upheld a frisk where the officer noticed a “large bulge under [the defendant’s] sports jacket.” 434 U.S. at 107, 98 S.Ct. 330. The only “criminal activity” at issue in Mimms was driving with an expired license plate, a crime unassociated with weapons. Id. Yet the Court said, “The bulge in the jacket permitted *795 the officer to conclude that Mimms was armed....” Id. at 112, 98 S.Ct. 380. So the bulge in Defendant’s left pocket was sufficient to give Officer Daley reasonable suspicion that Defendant was armed with a gun, in addition to the visible knife.
A.
Although the Court recognizes Daley had reasonable suspicion Defendant was armed, the Court nevertheless concludes “there was no indication that [Defendant] was presently dangerous to Officer Daley or other citizens.” Court’s op. at 788. The Court is correct that “[b]eing armed does not ineluctably equate with dangerousness.” Id. at 788. For example, a retired policeman or a cooperative citizen licensed to carry a gun may not present a danger to police, depending on the circumstances. But the Supreme Court had indicated that an armed person is usually dangerous, at least if he is detained by the police. In Mimms, the state conceded “the officer had no reason to suspect foul play from the particular driver at the time of the stop, there having been nothing unusual or suspicious about his behavior.” 434 U.S. at 109, 98 S.Ct. 330. Yet the Court said the bulge “permitted the officer to conclude that Mimms was armed and thus posed a serious and present danger to the safety of the officer. ” Id. at 112, 98 S.Ct. 330 (emphasis added). The Mimms Court apparently treated being armed as equivalent with being dangerous, even when there was no suspicious activity other than an expired license plate.[3] Yet here, the Court simply ignores the danger posed by Defendant’s potential possession, of a firearm.
Furthermore, this case is even stronger than Mimms because it involves additional suspicious circumstances not present in Mimms.[4] Defendant was in the vicinity of a criminal investigation and appeared desirous of avoiding law enforcement. He was visibly armed with a knife, yet said “no” when asked if he had any “weapons.” In Ryburn, the Court said the officer’s entry of the house “to avoid injury to themselves or others was imminently reasonable” based on the woman’s response of “turning and running into the house after refusing to answer a question about guns.” Ryburn, 132 S.Ct. at 992. Similarly, Officer Daley was faced with a person who was clearly lying about his possession of a weapon. Based on the totality of the circumstances, Officer Daley could reasonably conclude that Defendant was trying to conceal his possession the knife or additional weapons. This suspicion justified a protective frisk.
B.
In concluding Defendant was not “dangerous,” the Court errs in three important *796 ways. First, the Court unreasonably dismisses the dangers posed by knives. The Court says, “A folded knife in a person’s pocket hardly poses a danger to an armed officer six to eight feet away.” This cannot be the law. Six to eight feet is a distance that can be covered in two or three steps. This is hardly enough distance to render a knife unthreatening. See Estate of Larsen ex tel. Sturdivan v. Murr, 511 F.3d 1255, 1261 n. 1 (10th Cir.2008) (noting that Denver, Colorado’s police training manual “instructs that knife-wielding persons within 21 feet pose an ‘imminent threat’ to officers based on the time in which the distance can be closed in an attack”).
Nor does it matter that the knife was folded. Even a folding knife can be opened quickly and used as a weapon. The Seventh Circuit upheld the patdown of a vehicle passenger who had a “folded pocket knife visible in his front left pocket.” United States v. Robinson, 615 F.3d 804, 805 (7th Cir.2010). The Court said the officers were “authorized by Terry to make sure that he had nothing else in his possession that would endanger their safety.” Id. at 807. Likewise, the Eighth Circuit upheld a patdown where an officer observed a “small, folded knife” on the dashboard of a stopped car. United States v. Sanders, 196 F.3d 910, 912 (8th Cir.1999). So the Court is wrong to conclude that a folded knife “hardly poses a danger” to an officer only a few steps away.
Next, the Court’s reasoning is flawed because it misses the knife’s greater significance. Regardless of whether the knife posed a danger, its presence refuted Defendant’s statement that he had no weapons. A reasonable officer could conclude that a person trying to conceal his possession of a knife may also be concealing other weapons. He could also conclude the person was dangerous based on his desire to conceal a weapon from police detection. See United States v. Simpson, 609 F.3d 1140, 1149 (10th Cir.2010) (“[L]ies, evasions or inconsistencies about any subject ... may contribute to reasonable suspicion.”). The Court says “many law-abiding citizens would not consider themselves armed with a weapon, while carrying a folded pocket knife.” Court’s op. at 789. Whether this is true or not, it is irrelevant for several reasons.
First, we measure the reasonableness of police conduct based on a reasonable officer’s viewpoint, not a citizen’s. A court must ask whether “the facts available to the officer at the moment of ... the search ‘warrant a man of reasonable caution in the belief that the action taken was appropriate.” Terry, 392 U.S. at 21-22, 88 S.Ct. 1868 (emphasis added). See also United States v. Sanchez, 519 F.3d 1208 (10th Cir.2008) (“An officer may conduct a pat-down search if he or she harbors an articulable and reasonable suspicion that the person is armed and dangerous.” (internal quotation marks omitted) (emphasis added)). Whether a law-abiding citizen would consider a knife a “weapon” is entirely different from whether a police officer could reasonably fear a knife might be used as a weapon.
Second, courts have consistently treated knives as “weapons.” In Terry, the Court noted that virtually all officer deaths and a substantial portion of officer injuries are inflicted with “guns and knives.” Id. at 24, 88 S.Ct. 1868. The Court said a frisk is justified “to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.” Id. at 29, 88 S.Ct. 1868 (emphasis added). Consistent with Terry, we have concluded a “frisk was justified” when a stopped driver informed the officer he had a knife in his belt. United States v. Mikulski, 317 F.3d 1228, 1234 (10th Cir.2003). As the Ninth Circuit *797 has observed, “The possibility of a surprise attack at close quarters with even a small knife presents danger sufficient to justify an officer in taking reasonable protective measures.... ” United States v. Mattarolo, 209 F.3d 1153, 1158 (9th Cir.2000). To conclude that folded knives are not “weapons” would be a serious departure from precedent and simply unreasonable.
Third, we do not require a police officer to consider the fine distinctions of whether a folded knife is a “weapon” while making split-second determinations regarding his safety. “The reasonableness of a police officer’s actions is evaluated from the perspective of a reasonable officer on the scene, recognizing the police officer may have been forced to make split-second decisions in a stressful, dynamic, and dangerous environment.” Lundstrom v. Romero, 616 F.3d 1108, 1120 (10th Cir.2010). The Supreme Court recently reminded us that “judges should be cautious about second-guessing a police officer’s assessment, made on the scene of the danger presented by a particular situation.” Ryburn, 132 S.Ct. at 991-92. We are not to judge the dangers of a situation “[wjith the benefit of hindsight and calm deliberation,” but from the “perspective of a reasonable officer on the scene.” Id. (quoting Graham v. Connor, 490 U.S. 386, 396-97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Officer Daley saw a folding knife, an instrument that undoubtedly can be used as a weapon. He also observed a bulge consistent with a handgun. Yet Defendant denied having any weapons. Officer Daley could reasonably suspect Defendant was lying in an effort to conceal his possession of a weapon or weapons.
A final and most critical flaw in the Court’s analysis is that it focuses almost exclusively on the knife, while ignoring the threat of a firearm. Even if the Court were correct that a folded knife poses little danger at six to eight feet, a firearm certainly does pose a danger. This is especially true because Defendant’s hand was on the apparent bulge in his pocket. Defendant could have drawn and fired the gun at any time, or even fired it through his pocket. The Court points out that Daley never asked Defendant to remove his hand from his pocket. But the Fourth Amendment does not require such a preliminary step because “officers do not always have to use the least restrictive means as long as their conduct is reasonable.” Thomas v. Durastanti, 607 F.3d 655, 665 (10th Cir.2010). An officer should not “have to ask one question and take the risk that the answer might be a bullet.” Terry, 392 U.S. at 33, 88 S.Ct. 1868 (Harlan, J., concurring). Whatever the Court thinks of the dangers of folding knives, it cannot deny that firearms pose a serious threat of harm. And the facts here clearly show Officer Daley had reasonable suspicion Defendant possessed a firearm. Yet the Court tries to hedge even this point. The Court says allowing a search “based on the hunch that a citizen walking down the street is illegally carrying a firearm, without more, serves to erode the precious protections of the Second and Fourth Amendments.” (emphasis added). A hunch, as Terry makes clear, is very different from reasonable suspicion. Terry, 392 U.S. at 22, 88 S.Ct. 1868. But the Court’s suggestion that the bulge in Defendant’s coat supported only a “hunch” flies in the face of Mimms. 434 U.S. at 112, 98 S.Ct. 330 (“The bulge in the jacket permitted the officer to conclude that Mimms was armed and thus posed a serious and present danger to the safety of the officer.”). The facts clearly show Officer Daley had more than a “hunch” Defendant possessed a gun.
We should not second-guess Officer Daley’s determination that the subject of a consensual encounter who was obviously *798 armed with a knife, possibly armed with a handgun, and patently lying about his possession of a weapon was dangerous. We have been cautioned not to “require that police officers take unnecessary risks in the performance of their duties.” Terry, 392 U.S. at 23, 88 S.Ct. 1868. But the Court’s holding today does exactly that. I therefore dissent.

. Our sister circuits are divided on the issue of whether a protective frisk requires suspicion of criminal activity. Three circuits have upheld frisks based solely on officer safety. United States v. Orman, 486 F.3d 1170, 1176-77 (9th Cir.2007); United States v. Romain, 393 F.3d 63, 75 (1st Cir.2004); United States v. Bonds, 829 F.2d 1072, 1075 (11th Cir. 1987). Two circuits have concluded that a frisk requires reasonable suspicion of criminal activity. United States v. Burton, 228 F.3d 524, 528 (4th Cir.2000); United States v. Gray, 213 F.3d 998, 1000 (8th Cir.2000). Both Burton and Gray relied on Terry, even though Terry did not hold that suspicion of criminal activity was always required for a frisk. And the Eighth Circuit has not consistently followed Gray. See United States v. Ellis, 501 F.3d 958, 961-63 (8th Cir.2007)‘(upholding a frisk based on safety concerns without identifying any criminal activity for which reasonable suspicion existed).

. This "objective reasonable basis” standard is likely the same as Terry's "objective standard” of whether "the facts available to the officer ... warrant a man of reasonable caution in the belief that the action taken was appropriate.” Terry, 392 U.S. at 21-22, 88 S.Ct. 1868 (internal quotation marks omitted).

. This is not to say Mimms renders the "dangerous" inquiry superfluous, however. Mimms can likely be explained based on the confrontational circumstances inherent in a traffic stop. When an officer conducts a traffic stop, he has restricted a person's liberty and potentially made that person feel threatened or angry enough to harm the officer. Wilson, 519 U.S. at 414, 117 S.Ct. 882. In such a situation, any armed person is potentially dangerous. In a consensual encounter such as the one involved here, the officer has not restricted the person’s liberty and the person is free to walk away. Florida v. Royer, 460 U.S. 491, 497-98, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). But an officer can nevertheless reasonably fear danger from an armed person during a consensual encounter. See Orman, 486 F.3d at 1176.

. These circumstances distinguish the present case from Professor LaFave's hypothetical, quoted by the Court, of a bulge in "the pocket of a pedestrian who is not engaged in any suspicious conduct." 4 Wayne R. LaFave, Search and Seizure § 9.6(a) (2004) (emphasis added). Here, Officer Daley had observed suspicious conduct, even if the conduct did not give rise to reasonable suspicion.